Gerald Nolan, J.
This proceeding in the nature of prohibition is brought by the guardian ad litem of two infants, one 17 and the other 15 years of age, to restrain the respondent Wyman, as the New York State Administrator of the Interstate Compact on Juveniles (see L. 1955, ch. 155), the Family Court of the State of New York, County of Westchester, and the Honorable Robeet E. Dempsey, a Judge of that court, from enforcing a requisition issued by the Fourth District Court of Plymouth, Massachusetts, pursuant to the compact, for the return of the infants to the State of Massachusetts. Prior to *643 June 17, 1963, the infants resided with their parents in Mattapoisett, Massachusetts. It is alleged in the petition and supporting affidavits that because of conditions in the home which caused them to fear for their physical safety and moral welfare, and with good and just cause they left the home of their parents and came to the home of the petitioner, their older sister, who resides in Westchester County. The requisition which they seek to restrain was thereafter issued on the application of their parents and was forwarded to the defendant Wyman, who forwarded it, and the supporting papers to the Family Court, in Westchester County, which issued a subpoena to the petitioner to obtain information with respect to the infants. In response thereto petitioner appeared before the Honorable Robert E. Dempsey, a Judge of the court, and the parents of the infants likewise appeared by counsel. Petitioner’s motion to quash the subpoena on the ground that the court had no jurisdiction was denied, and, as a condition to the granting of an adjournment, the infants were required to and did appear before the court, were declared to be wards of the court, and an adjournment was granted to enable petitioner to test the legality of the proceeding. Thereafter this proceeding was commenced and simultaneously petitioner applied to this court in a separate proceeding to have custody of the infants awarded to her on the ground that the grant of custody to their parents would endanger their welfare and safety.
It is alleged in the amended petition in this proceeding that the health, safety and morals of the infants will be endangered if they are returned to their parents, who, petitioner asserts, are unfit to have their custody. It is also asserted that enforcement of the requisition is without and in excess of the jurisdiction of the defendants Wyman, the Family Court and the Judge, because the compact pursuant to which it was issued is repugnant to the due process clauses of the Constitutions of the State of New York and of the United States, in that it deprives persons, and particularly these infants, of their liberty, without notice or opportunity to be heard, is repugnant to section 10 of article I of the Constitution of the United States in that it is a compact between States which has not received the approval of Congress, is further repugnant to the Fourteenth Amendment of the Constitution of the United States in that it denies the infants equal protection of the law and abridges their privileges and immunities as citizens, that it violates article VI of the New York State Constitution in that it attempts to divest the Supreme Court of the State of New York of its constitutional jurisdiction and to give judicial power to the respondent- Wyman, who is not a *644 Judge or Justice of any court. It is also asserted that the enforcement of the compact is not within the jurisdiction of the Family Court or a Judge thereof, as provided by law.
The Attorney-General has moved to dismiss the petition, and it is my understanding that the motion may be considered as addressed to the amended petition, on the grounds that it is insufficient to entitle the petitioner to any relief, and on the further ground that with respect to the respondent Wyman the petition reveals no action, inaction, or determination on his part which authorizes relief.
The Interstate Compact on Juveniles was executed on behalf of the State of New York pursuant to chapter 155 of the Laws of 1955, and clearly states its purpose, based on a finding that juveniles who are not under proper supervision, or who have absconded, escaped or run away are likely to endanger their own health, morals and welfare, and the health, morals and welfare of others, to provide for the welfare and protection of juveniles and of the public with respect (inter alia) to the return, from one State to another, of nondelinquent juveniles who have run away from home. It is provided that in carrying out the provisions of the compact the party States shall be guided by the noncriminal, reformative and protective policies which guide their laws concerning delinquent, neglected, or dependent juveniles, generally, that the party States shall observe their respective responsibilities for the prompt return of juveniles who become subject to the provisions of the compact, and that such provisions shall be reasonably and liberally construed to accomplish its purposes. It is further stated that the remedies and procedures provided by the compact shall be in addition to, and not in substitution for, other rights, remedies and procedures.
Article IY of the compact, xvith which we are here concerned, deals with the return of runaways. It provides that the parent, guardian, person or agency entitled to legal custody of a juvenile who has not been declared delinquent but who has run away may petition the appropriate court in the demanding State (any court having jurisdiction over delinquent, neglected or dependent children) for the issuance of a requisition for his return. The petition, besides meeting other requirements, must state facts tending to show that the juvenile is endangering his own welfare or the welfare of others. The Judge to whom the application is made may decide either after or without a hearing whether or not it is in the best interest of the juvenile to compel his return to the State. If he so decides he may present to the appropriate court or to the executive authority of the State *645 where the juvenile is alleged to be located a written requisition for his return. Upon receipt of such requisition the court or the executive authority to whom the requisition is addressed shall issue an order directing that the juvenile be taken into custody and detained. No juvenile so detained may be delivered over to the officer designated by the demanding court to receive him, however, unless he shall first be taken before a Judge of a court having jurisdiction over delinquent, neglected or dependent children, who shall inform him of the demand for his return, and who may appoint counsel or guardian ad litem for him. If the Judge finds that the requisition is “in order ” he shall deliver such juvenile over to the officer whom the court in the demanding State shall have appointed to receive him. The Judge may, however, fix a reasonable time to be allowed for the pujpose “ of testing the legality of the proceeding.”
Concededly the compact has not received the approval of Congress. Nevertheless, it' is not repugnant to the provisions of the third clause of section 10 of article I of the Constitution of the United States insofar as they provide that no State shall, without the consent of Congress, enter into any agreement or compact with another State. The constitutional prohibition does not apply to every possible compact or agreement between one State and another, but is directed to the formation of any combination tending to increase the political power in the States which may encroach upon or interfere with the just supremacy of the United States (Virginia v. Tennessee, 148 U. S. 503, 519; Landes v. Landes, 1 N Y 2d 358, 365). The compact on juveniles has no such purpose or effect.
Neither is the compact repugnant to the provisions of the Fourteenth Amendment of the United States Constitution in the sense that it denies these infants equal protection of the law or abridges their privileges and immunities as citizens of the United States. The equal protection clause of the Fourteenth Amendment does not take from the States the power to classify in the adoption of laws designed to implement the authority of the State as parens patries or to protect the public safety and welfare, and it does not appear that there has been any arbitrary or unreasonable classification in the compact, insofar as it applies to runaways. Since the compact applies uniformly to all runaways from States which are parties to it, petitioner may not complain that the infants have been denied equal protection of the law. Neither does it appear that any of their privileges or immunities have been abridged if they are properly subject to the restraint authorized by the compact. A more serious question is presented, however, by their claim *646 that they have been denied due process of law because the compact does not provide for notice and a hearing at which they may establish that they are not properly subject to such restraint, and that their return to the demanding State will not be in their best interest, but will endanger their physical and moral welfare.
If the provisions of the compact are to be literally and strictly interpreted, little argument is required to demonstrate the merit of petitioner’s criticism of them. So interpreted, they permit an ex parte determination that those making application for a requisition in the demanding State are entitled to custody of the infants, that the infants are endangering their own welfare, or the welfare of others, and that it is in their best interests to compel their return to the demanding State. When a requisition is issued, an order may be made, again without notice to them, directing their arrest and restraint, and although they must be taken before a Judge, he must deliver them over to the officer appointed to receive them, to be returned if he finds that the requisition is “ in order ” although he may fix a reasonable time for the purpose of testing the legality of the proceeding. Nowhere does the compact expressly provide that a hearing of any kind must be given the infants, either before or after their return to the State to which they are to be returned, although they are to be subject, on their return, to “ such further proceedings as may be appropriate, under the laws of that State. ’ ’
Although due process of law cannot be defined with precision, the very least which it requires is “ an orderly proceeding adapted to the nature of the case in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard is absolutely essential” (Stuart v. Palmer, 74 N. Y. 183, 191; Matter of Coates, 9 N Y 2d 242, 249).
The compact, as has been stated, provides for a finding that it is for the best interests of a juvenile, who has run away from parental or other legal custody, to compel his return, without notice to the juvenile, but a requisition may not issue, nor may he be arrested or detained under it, unless an application for the requisition has been made by a parent, guardian or other person who has at least a prima facie right to custody, and who may be presumed, in the absence of proof to the contrary, to speak for the juvenile and to act in his best interests. The requisition issues, and the arrest and detention of the juvenile is directed, when the Judge to whom the application is made is satisfied that it is in his best interests that he be *647 returned, because immediate action is necessary, for his protection and welfare, and that of society. Under such circumstances, due process does not require, nor are his privileges and immunities as a citizen abridged, by temporary confinement pending inquiry into the facts (cf. People ex rel. Riesner v. New York Nursery & Child’s Hosp., 230 N. Y. 119; Matter of Coates, 9 N Y 2d 242, 249, 250, 251; People ex rel. Ordway v. St. Saviour’s Sanitarium, 34 App. Div. 363). Even so some right must be given the juvenile to establish, if such is the case, that those who seek to have him returned to their custody in the State from which he has run away are not in fact acting in his interests, but on the contrary seek to have him returned to a custody which will endanger his physical or moral welfare. If the provisions of the compact are to be construed, therefore, as authorizing the arrest, restraint and return of these infants to parental custody, without a hearing at some stage of the proceeding before a final determination that such procedure will be in their best interests, there can be little doubt as to its unconstitutionality. In my opinion, however, such construction of the compact is neither necessary nor proper. It must be remembered that the legislation which authorized the adoption of the compact was enacted to provide for the welfare and protection of juveniles as well as that of the public, and is required to be reasonably and liberally construed to accomplish its purposes. It is expressly stated that the remedies and procedures provided by the compact are not in substitution for other rights, remedies and procedures. It is also significant that a juvenile arrested must be taken before a Judge of a court having jurisdiction over delinquent, neglected or dependent children, who may appoint counsel or a guardian ad litem for him. That provision would hardly be necessary, nor is it consistent with an intent that the juvenile should be delivered over to the officer appointed to receive him, and to effect his return on a determination without further inquiry into the facts that the requisition is ‘1 in order ’ ’ in the sense that it appears to have been issued in accordance with the compact provisions. Neither does the compact when read in the light of its declared purposes attempt expressly or by fair implication to oust the Supreme Court of its traditional plenary jurisdiction as successor to the Chancellor ?s prerogative as parens patrice (cf. Finlay v. Finlay, 240 N. Y. 429). These infants, found within the State of New York, had a right, which they were entitled to assert, despite the domicile of their parents (Finlay v. Finlay, supra) to invoke that jurisdiction in one of two ways: by writ of habeas corpus, if they had been taken *648 into custody, which in controversies touching the custody of children is governed not so much by considerations of strictly legal rights as by those of expediency and equity, and above all, the interests of the children (People ex rel. Riesner v. New York Nursery & Child’s Hosp., 230 N. Y. 119, supra), or by petition to the Supreme Court, the procedure followed in the companion proceeding in the instant case [41 Misc 2d 650], upon which petition the court acts, as parens patrice, to do what is best for the welfare of the child (Finlay v. Finlay, supra). It was for that reason, presumably, that there was included in the compact the provision that 1 ‘ the judge * * * may fix a reasonable time to be allowed for the purpose of testing the legality of the proceeding ’ ’ which in my opinion should be construed as requiring the fixation of a reasonable time within which the juvenile may invoke his appropriate remedy rather than authorizing such action as a matter of grace.
It must be conceded that more appropriate language could have been employed to express that intent. It is, however, consistent not only with the expressed purposes of the compact but also with the concern of the State with the welfare of infants, and that of the Legislature, acting on behalf of the State as parens patrice (cf. Matter of Brock, 245 App. Div. 5) and it has been frequently held, in giving effect to the legislative intent, that when power to act is given to public officers, by language permissive in form, the language must be construed as mandatory, whenever the public interest, or individual rights, call for the exercise of the power (People ex rel. Otsego County Bank v. Board of Supervisors of Otsego County, 51 N. Y. 401, 407; Phelps v. Hawley, 52 N. Y. 23; People ex rel. Reynolds v. Common Council, 140 N. Y. 300).
It is not necessary, however, in this proceeding, to determine whether the compact should be so construed. Whatever the intent of the compact may be, the facts alleged and conceded establish that these infants are not aggrieved, even if the compact does not, by its provisions, afford them a hearing. They have asked for and received an adjournment of the proceedings before the Family Court, and have made application to this court for the determination of their right to remain with and under the custody of their sister. The same application might have been made to the Family Court (see 1ST. Y. Const., art. VI, § 13, subd. b, par. [2]). It is provided by the Constitution that the Supreme Court is continued and shall have general jurisdiction in law and equity (1ST. Y. Const., art. VT, §§ 6, 7). It follows that its jurisdiction cannot be limited by the Legislature or by any authority conferred or duty *649 imposed by the Legislature upon the court (cf. People ex rel. Mayor v. Nichols, 79 N. Y. 582, 591, 592; People ex rel. Swift v. Luce, 204 N. Y. 478; Riglander v. Star Co., 98 App. Div. 101, affd. 181 N. Y. 531). The legislative power to alter and regulate the jurisdiction and proceedings in law and equity (N. Y. Const., art. VI, § 30) may be exercised only as it has heretofore been exercised, and the power as heretofore exercised, did not include the power to revoke or limit jurisdiction when the Constitution had 11 otherwise provided.” The Constitution has otherwise provided with respect to the jurisdiction of the Supreme Court (cf. Ocorr v. Lynn, 105 Misc. 489). The compact does not therefore in any way affect the jurisdiction of this court. Neither does it affect similar jurisdiction with respect to custody of minors granted to the Family Court by constitutional amendment effective over seven years after the compact was executed (N. Y. Const., art. VI, § 13, subd. b, par. [2]) no matter what its intent may be. It follows that whether the custody proceeding shall be heard in this court, or, as has been suggested, in the Family Court, the infants will receive a hearing at which they will be permitted to develop the facts and in which the decision must rest solely on consideration of their welfare (Finlay v. Finlay, 240 N. Y. 429, supra) and their best interests must prevail even over the so-called paramount rights of their parents (Matter of Bock, 280 N. Y. 349), the previous determination of the Massachusetts court (Matter of Bachman v. Mejias, 1 N Y 2d 575), and any inconsistent requirement of the compact. Presumably it was to insure that such a determination would be made that the infants were declared to be wards of the Family Court. The constitutionality of a statute may be tested only by one personally aggrieved thereby, and then only if the determination of the grievance requires a determination of constitutionality (St. Clair v. Yonkers Raceway, 13 N Y 2d 72; People v. Faxlanger, 1 N Y 2d 393; Thompson v. Wallin, 276 App. Div. 463, 466). No such determination is required in this proceeding. For the same reason it is unnecessary to decide whether or not the compact violates the Constitution of the State of New York by attempting to give judicial powers to the respondent Wyman. If it be assumed that the compact does attempt to give such powers to the compact administrator, it is not alleged in the petition nor has any proof been submitted that he has attempted to exercise them.
Petitioner’s final contention, that the enforcement of the compact is not within the jurisdiction of the Family Court, or a Judge thereof, may not be sustained. The court has complete *650 jurisdiction to decide all questions which may arise in any proceeding which is presently before it or which may be brought to implement the provisions of the compact, or to determine questions of custody, and the Judges of the Family Court are obviously Judges of a court as defined in the compact.
Petitioner’s motion to further amend her petition by pleading as to the infant Victoria Yen the provisions of section 913-a of the Code of Criminal Procedure will be granted on condition that the motion to dismiss shall be deemed to be directed against the petition as so amended. The amendment, however, does not provide sufficient grounds for a denial of that motion. The meaning of section 913-a insofar as it relates to the compact is not clear. If it was intended to provide that infants over 16 who have been adjudicated wayward minors shall be subject to the provisions of article IV of the compact only if they have left their homes without just cause, and are morally depraved or in danger of becoming morally depraved, it has no application whatever to Victoria, since she has never been adjudicated a wayward minor. If it means, as seems more likely, that the provisions of article IV of the compact shall apply to infants over 16 who may be deemed wayward minors, only under such circumstances, it will be for the Family Court Judge to determine the facts upon which he must decide whether he has jurisdiction to enforce the compact. Belief in the nature of prohibition should not be granted in such a case (cf. Matter of Kenler v. Murtagh, 12 A D 2d 662). Petitioner’s motion to correct the caption of the proceeding will also be granted. Insofar as the respondent Wyman is concerned, the petition reveals that no determination, action or inaction on his part with respect to which relief may be granted, is involved in the proceeding. Respondents’ motion to dismiss is granted, and an order may be submitted accordingly on notice.