533 A.2d 1001

**In the Interest of C.P.**

**Appeal of C.P.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1987.
Decided Dec. 2, 1987.

See also, 516 Pa. 550, 533 A.2d 1006.

Georgene Siroky, Child Advocacy Legal Aid Society, Pittsburgh, for appellant.

There exists no party against whom damages could have been assessed.

James A. Esler, Allegheny County Law Dept., Pittsburgh, for Allegheny County.

Timothy W. Pawol, Joseph Mack, III, Thorp, Reed & Armstrong, Pittsburgh, for J.P.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which reversed an order of the Court of Common Pleas of Allegheny County in a case involving the return of a runaway child under provisions of the Interstate Compact on Juveniles, 62 P.S. § 731. In accordance with provisions of this Compact, a requisition had been filed in North Carolina by the father of the runaway child requesting that the child, C.P., be returned from Pennsylvania to North Carolina.

At the time of running away from home, C.P. resided with her father in North Carolina, though at various times prior thereto she had resided with her mother, inasmuch as C.P.'s parents were separated. The mother of C.P. had relinquished primary custody to the father. Born on July 26, 1971, C.P. was merely twelve years of age when she became pregnant via her mother's lover, twenty-four year old Gregory Kline. As a result, on December 2, 1984, C.P. gave birth to a son, J.P. Gregory Kline was accordingly charged in North Carolina with statutory rape. Following the birth of J.P., C.P. resided with her infant son at her father's home until, in February of 1985, she took J.P. and ran away to Pennsylvania. In Pennsylvania, C.P. and J.P. took up residence with Mrs. Katherine Kline, the mother of Gregory Kline, and C.P. resumed a limited and somewhat supervised romantic relationship with Gregory Kline, seeing him several times per week. Authorities in Pennsylvania subsequently received a requisition from North Carolina

pursuant to the Interstate Compact on Juveniles seeking the return of C.P.

The Court of Common Pleas of Allegheny County held a hearing to determine whether it would be in the child's best interests to be returned, and, because C.P. testified that she had been abused by her father, determined that the child's interests would best be served by remaining in Pennsylvania. It is to be noted that, although the parents of C.P. were provided legal notice of the hearing in Pennsylvania, they were not in attendance. Also, a social services agency in North Carolina had furnished Children and Youth Services of Allegheny County with a letter stating that, immediately upon C.P.'s return to North Carolina, C.P. would be picked up by a social worker who would investigate the case in the event that C.P. expressed serious reservations about her safety. Nevertheless, based upon its assessment of the child's best interests, the Court of Common Pleas declined to honor the requisition for the return of C.P. An appeal was taken to the Superior Court, whereupon C.P. and J.P. were ordered to go back to North Carolina. *In re C.P.*, 354 Pa.Super. 107, 511 A.2d 210 (1986). The Superior Court held that, under provisions of the Interstate Compact on Juveniles, it was improper for the court below to have conducted an inquiry into the child's best interests, and that such an inquiry was reserved for the requisitioning state. We agree.

The relevant language of the Interstate Compact on Juveniles clearly places upon courts in the requisitioning state, in this case North Carolina, the burden of determining the best interests of the child. Upon receipt by a court of a petition for issuance of a requisition order, where such a petition has been filed by a person claiming legal custody of a runaway child, the court is directed to proceed as follows under provisions of 62 P.S. § 731, Art. IV (a):

> The judge of the court to which this application is made may hold a hearing thereon to determine whether for the purposes of this compact the petitioner is entitled to the legal custody of the juvenile, whether or not it appears

that the juvenile has in fact run away without consent, whether or not he is an emancipated minor, and *whether or not it is in the best interest of the juvenile to compel his return to the state.* If the judge determines, either with or without a hearing, that the juvenile should be returned, he shall present to the appropriate court or to the executive authority of the state where the juvenile is alleged to be located a written requisition for the return of such juvenile.

(Emphasis added).

Further, the necessary form of the requisition order is specified in 62 P.S. § 731, Art. IV(a):

Such requisition shall set forth the name and age of the juvenile, the determination of the court that the juvenile has run away without the consent of a parent, guardian, person or agency entitled to his legal custody, and *that it is in the best interest and for the protection of such juvenile that he be returned.*

(Emphasis added). In view of these clear provisions, it is evident that the requisitioning state is charged with the responsibility of making a determination as to whether the return of a runaway child would serve the child's best interests.

The duties of the asylum state to which the requisition is sent are set forth in 62 P.S. § 731, Art. IV(a): [1]

No juvenile detained upon such order shall be delivered over to the officer whom the court demanding him shall have appointed to receive him, unless he shall first be taken forthwith before a judge of a court in the state, who shall inform him of the demand made for his return, and who may appoint counsel or guardian ad litem for him. If the judge of such court shall find that the *requisition is in order, he shall deliver such juvenile* over to the officer whom the court demanding him shall

---

1. In *Interest of Kallinger*, 481 Pa. 185, 392 A.2d 309 (1978), this Court addressed duties of the asylum state under a section of the Interstate Compact that is not here applicable, 62 P.S. § 731, Art. XVII, which governs requisitions issued for juveniles alleged to be delinquent.

have appointed to receive him. The judge, however, may fix a reasonable time to be allowed for the purpose of testing the legality of the proceeding.

(Emphasis added). Clearly, this provision, by its use of the language "shall deliver," makes delivery of the juvenile mandatory whenever the requisition is found to be "in order." A requisition must be regarded as meeting that requirement when its contents are in compliance with the specified form for requisition orders set forth in 62 P.S. § 731, Art. IV(a), supra, provided that the issuing court has made the findings specified in that section relating to custody rights, the child's best interests, etc.

In the present case, the court in North Carolina issued a requisition that was in compliance with requirements as to contents and form, and made all of the necessary findings to support issuance of the requisition order. It is not asserted in this appeal that the requisition contained defects in its form, or that findings were not made by the court in North Carolina. Rather, C.P. seeks to challenge the substantive findings of that court by means of a hearing in Pennsylvania directed at relitigating the issue of whether C.P.'s best interests would be served by returning to North Carolina. In short, C.P. contends that 62 P.S. § 731, Art. IV(a), supra, requires the asylum state, to wit, Pennsylvania, to determine the runaway child's best interests before complying with a requisition order. See *In re M.D.*, 298 S.E.2d 243 (S.Ct.W.Va.1982); *Application of Pierce*, 184 Mont. 82, 601 P.2d 1179 (1979); *Application of Chin*, 41 Misc.2d 641, 246 N.Y.S.2d 306 (1963). It is further alleged by C.P. that to deny such a procedure would amount to a denial of due process. See *In re M.D.*, supra; *Application of Chin*, supra. We do not agree.

The language of the Interstate Compact on Juveniles is clear in its requirement that a juvenile be returned to the requisitioning state in cases where the requisition is found to be "in order." In contrast to the provisions governing procedures to be followed in the requisitioning state, where a determination of the juvenile's best interests is expressly

required, the provisions setting forth duties of the asylum state clearly lack any mention of a need for further determination of the same issue. Where the Interstate Compact expressly requires the determination in question to be made in the requisitioning state, but does not specify that a similar determination is to be made in the asylum state, it can only be concluded that the intent was that the requisitioning state, alone, should be charged with the duty of making findings regarding the juvenile's best interests.

Such a conclusion comports with the logical notion that, in the usual case, it will be the requisitioning state that has the more significant, established, and longer-term contacts with the runaway child, thus placing it in a better position to bring evidence to bear on the question of the juvenile's best interests. Further, the need to make two separate best-interests determinations in every case where a runaway child is to be returned to a home state would be an onerous burden on the parties concerned, especially considering the potential distances involved in interstate travel for parents and others who would perceive the need to travel to an asylum state to rebut a child's foreseeable assertions that life in the home state was undesirable. ("A runaway monk never speaks well of his monastery."—Italian Proverb). The Interstate Compact was designed to expedite the return, across state lines, of runaway children, and the need for inconvenient and duplicitous determinations of the best-interests issue was one of the obstacles that the Interstate Compact was no doubt designed to eliminate.

The purpose of the Interstate Compact is described in 62 P.S. § 731, Art. I, which provides in pertinent part:

The cooperation of the states party to this compact is therefore necessary to provide for the welfare and protection of juveniles and of the public with respect to ... (3) the return, from one state to another, of non-delinquent juveniles who have run away from home.... It shall be the policy of the states party to this compact to cooperate and observe their respective responsibilities for the prompt return and acceptance of juveniles ... who be-

come subject to the provisions of this compact. The provisions of this compact shall be reasonably and liberally construed to accomplish the foregoing purposes.

The salient goal of the Interstate Compact is, therefore, to promote interests in reciprocity and cooperation among the participating states. The furtherance of those interests is dependent upon each participating state recognizing that sister sovereign states display no less jurisprudential excellence in dealing with issues involving the interests of runaway children. Deference to the best-interests determination of the requisitioning state is, therefore, an integral part of the scheme, and is a reason for having made mandatory an asylum state's return of juveniles that are subject to valid requisition orders.

We find no merit in the contention that juveniles are, by the procedures for returning them to a requisitioning state, denied due process. The provision governing action by asylum states, 62 P.S. § 731, Art. IV(a), supra, expressly provides that an asylum state's court "may" allow a reasonable time for the "legality of the proceeding" to be tested prior to the juvenile being delivered to the officer designated by the requisitioning court. This provision must, in light of considerations of due process, be construed as allowing challenges to the legality of the proceeding as a matter of right. In addition to the procedures, if any, that may be available in the requisitioning state to challenge the legality of the proceeding and thereby seek withdrawal of the requisition, it is clear that, in the asylum state, the question of whether the requisition is "in order" may be duly litigated. While such litigation may address matters of whether the form and contents of the requisition are in compliance with the Interstate Compact, and whether the issuing court made the findings required, it does not encompass relitigation of the best-interests issue that is properly in the realm of the requisitioning forum. See *Matter of Edwards*, 15 Or.App. 677, 516 P.2d 1303 (1973).

It is provided in 62 P.S. § 731, Art. IV(a) that, "Upon his return to the state from which he ran away, the juvenile

shall be subject to such further proceedings as may be appropriate under the laws of that state." Thus, the mere fact that a child has been returned to a requisitioning state does not foreclose further litigation raising issues pertaining to the child's best interests. Ultimate issues which may permanently affect the juvenile's best interests can be resolved upon return to the home state, including questions of custody, dependency, etc. Granted, the procedures of the Interstate Compact will not result, in the usual case, in a child having an opportunity in the asylum state to testify regarding conditions that motivated a departure from home. Nevertheless, transporting the child to the requisitioning jurisdiction is a measure that may precede more permanent and substantive adjudications pertaining to the child's best interests, such being adjudications in which the child will no doubt have ample opportunities to testify.

Thus, having determined that the Superior Court properly held that the requisition issued for C.P.'s return to North Carolina must be enforced,[2] we affirm the portion of the order that so mandates. The portion of the order that

2. As was held by the Superior Court, the Uniform Child Custody Jurisdiction Act (hereinafter UCCJA), 42 Pa.C.S.A. § 5341 et seq., is not applicable to this case. The UCCJA provides jurisdiction to make a custody determination, by initial or modification decree, in certain cases where a child is physically present in the Commonwealth, provided "it is necessary in an *emergency* to protect the child because he has been subjected to or threatened with mistreatment or abuse. . . ." 42 Pa.C.S.A. § 5344(a)(3) (emphasis added). Citing this provision, the Court of Common Pleas found support for exercising jurisdiction over C.P. in Pennsylvania, and for refusing to honor the North Carolina requisition on grounds it believed C.P.'s interests would be best served by remaining in Pennsylvania. It is to be noted, however, that no petition had been filed seeking an adjudication of legal custody with respect to C.P., and, further, the requisition to return to North Carolina presented no "emergency," particularly in view of the fact that a social services agency in North Carolina had furnished an assurance that, upon C.P.'s return to North Carolina, C.P. would be picked up by a social worker who would investigate the case if C.P. expressed serious reservations about her safety. See also 42 Pa.C.S.A. § 5344(a)(4) (subordination of jurisdiction). If the UCCJA were viewed here as a basis for jurisdiction, it would lead to the untenable result that virtually any allegation of emergency in cases such as this would effectively negate the applicability of the Interstate Compact on Juveniles.

requires a return of J.P. to North Carolina is addressed separately in a companion case, *In the Interest of J.P.*, 516 Pa. 550, 533 A.2d 1006 (1987).

Order affirmed in part.

LARSEN, J., files a dissenting opinion.

HUTCHINSON, Former J., did not participate in the consideration or decision of this case.

LARSEN, Justice, dissenting.

I dissent, and, on the basis of the thoughtful opinion of the Honorable James McLean, would reverse the decision of Superior Court enforcing the requisition issued for C.P.'s return to North Carolina.

In addition, I would note that C.P. has not sought to *re*litigate the issue of whether her best interests would be served by returning to North Carolina, *see* maj. op. at 1003 and 1004, in that C.P.'s best interests had not been *litigated* [1] in any forum prior to the hearing before the Court of Common Pleas of Allegheny County, Juvenile Division. The requisition order was issued solely on the basis of an affidavit filed by C.P.'s father. C.P. was not heard by the court in North Carolina, nor was she given an opportunity to be heard. There is no provision in the Interstate Compact on Juveniles, 62 P.S. §§ 731–735, guaranteeing that C.P. will be heard in court prior to being returned to her father. Thus, the Compact, as interpreted by the majority, unconstitutionally deprives minors of their right to due process.

Of the five states whose courts have considered the propriety of a "best interest" hearing in the responding (or asylum) state, four have determined that the Compact does not bar such a hearing. *In re: M.D.*, 298 S.E.2d 243 (S.Ct.W.Va.1982); *Application of Pierce*, 184 Mont. 82, 601 P.2d 1179 (1979); *In re: Welfare of Wiles*, 15 Wash.App. 61, 547 P.2d 302 (1976); *Application of Chin*, 41 Misc.2d

1. Litigation is defined as a judicial *contest*, which means that *opposing* parties are heard in a court of law with regard to a matter in dispute.

641, 246 N.Y.S.2d 306 (1963). As the court in *Chin* aptly stated:

> It is ... significant that a juvenile arrested must be taken before a judge of a court having jurisdiction over delinquent, neglected or dependent children, who may appoint counsel or a guardian ad litem for him. That provision would hardly be necessary, nor is it consistent with an intent that the juvenile should be delivered over to the officer appointed to receive him, and to effect his return on a determination without further inquiry into the facts that the requisition is "in order" in the sense that it appears to have been issued in accordance with the compact provisions.

246 N.Y.S.2d at 313.