533 A.2d 1006

**In the Interest of J.P.**

**APPEAL OF C.P.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1987.
Decided Dec. 2, 1987.

See also, 516 Pa. 541, 533 A.2d 1001.

Georgene Siroky, Child Advocacy Legal Aid Society, Pittsburgh, for appellant.

James A. Esler, Allegheny County Law Dept., Pittsburgh, for Allegheny County.

Timothy W. Pawol, Joseph Mack, III, Thorp, Reed & Armstrong, Pittsburgh, for J.P.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court which reversed an order of the Court of Common Pleas of Allegheny County in a case involving the return of a runaway child under provisions of the Interstate Compact on Juveniles, 62 P.S. § 731. At the time of running away from home, the child in question, C.P., resided with her father in North Carolina, though at various times prior thereto she had resided with her mother, inasmuch as C.P.'s parents were separated. The mother of C.P. had relin-

quished primary custody to the father. Born on July 26, 1971, C.P. was merely twelve years of age when she became pregnant via her mother's lover, twenty-four year old Gregory Kline. As a result, on December 2, 1984, C.P. gave birth to a son, J.P. Gregory Kline was accordingly charged in North Carolina with statutory rape. Following the birth of J.P., C.P. resided with her infant son at her father's home until, in February of 1985, she took J.P. and ran away to Pennsylvania. In Pennsylvania, C.P. and J.P. took up residence with Mrs. Katherine Kline, the mother of Gregory Kline, and C.P. resumed a limited and somewhat supervised romantic relationship with Gregory Kline, seeing him several times per week. Authorities in Pennsylvania subsequently received a requisition from North Carolina, pursuant to the Interstate Compact, seeking the return of C.P. The requisition had been requested by the father of C.P. No requisition had been requested, however, with respect to J.P.

The Court of Common Pleas of Allegheny County ordered that the requisition for C.P. not be honored, holding that the interests of C.P. and J.P. would best be served by remaining in Pennsylvania, inasmuch as C.P. claimed to have been abused by her father in North Carolina. An appeal was taken to the Superior Court, whereupon it was held that, under provisions of the Interstate Compact, it was improper for the court below to have conducted an inquiry into C.P.'s best interests, since such inquiries are reserved for the requisitioning state. Accordingly, the requisition for C.P.'s return to North Carolina was held to be enforceable. *In re C.P.,* 354 Pa.Super. 107, 511 A.2d 210 (1986). We affirmed, in the companion to the present appeal. *In the Interest of C.P.,* 516 Pa. 541, 533 A.2d 1001 (1987). The instant appeal arises because, at the same time as it ordered that C.P. be returned to North Carolina, the Superior Court ordered also that J.P. be returned to that state. *In re J.P.,* 354 Pa.Super. 107, 511 A.2d 210 (1986).

It is the desire of C.P. that J.P. be permitted to continue to reside in the home environment provided by J.P.'s pater-

nal grandmother in Pennsylvania. That arrangement is apparently satisfactory to the paternal grandmother, Mrs. Kline, as well as to the father of J.P., Gregory Kline. Thus, this is not a case where there is a custody dispute between parents, or where a third party, such as a grandparent, seeks to obtain custody against the wishes of the parents. See *Albright v. Commonwealth*, 491 Pa. 320, 421 A.2d 157 (1980) (custody dispute between parent and grandparent). In simple terms, the case presented is one where the parents of an infant wish to allow the infant to reside with a grandparent in Pennsylvania, but where the Superior Court has ordered that the infant return to North Carolina.

C.P. contends that, since no requisition was ever filed seeking the return of J.P. to North Carolina, the Superior Court erred in issuing its order with respect to J.P. We agree. The Interstate Compact sets forth in detail the procedures to be followed in obtaining the return of a child to its home state. 62 P.S. § 731, Art. IV(a); *In the Interest of C.P.*, 516 Pa. 541, 533 A.2d 1001 (1987). Those procedures plainly require issuance of a requisition by a court in the home state, upon the request of a person having a right to legal custody of the child. *Id.* In the present case, there simply was no requisition issued with respect to J.P. The Superior Court proceeded nevertheless to order that J.P. return with C.P. to North Carolina, despite C.P.'s wishes to the contrary. In so ordering, the Superior Court reasoned that the interests of J.P. would best be served in North Carolina.

It is, of course, well established that "the cardinal concern in all custody cases is the best interest and permanent welfare of the child." *Albright v. Commonwealth*, 491 Pa. at 323, 421 A.2d at 158. As already noted, however, the present case does not involve a dispute between persons seeking to gain custody of J.P. Rather, it involves parents who have made a decision as to where their son, J.P., should, at least for the time being, be allowed to reside, and it involves an order of the Superior Court that overrides

that decision. We believe the order entered with respect to J.P. was improper.

The issue before the Superior Court was whether the Court of Common Pleas erred in declining to honor a requisition for the return of C.P. to North Carolina. The question of whether J.P. should also be returned to that state was not at issue. Further, although C.P. is young in age, she is, nevertheless, the mother of J.P. As parents, C.P. and Gregory Kline have certain prerogatives as to the manner in which J.P. is raised. It is not uncommon for parents to permit their offspring to reside with a grandparent during such times as that arrangement appears desirable. The importance of the parental role in making decisions affecting offspring was noted in *Ellerbe v. Hooks*, 490 Pa. 363, 369, 416 A.2d 512, 514–515 (1980), where this Court stated, "[P]arenthood has traditionally served and continues to serve as our society's fundamental criterion for allocating control over and responsibility for our children, and ... *without some showing of harm,* the courts should not interfere with that arrangement." (Emphasis added). See also *Albright v. Commonwealth*, 491 Pa. at 325, 421 A.2d at 159. While the present case does not involve an attempt to interfere with the parental custody rights of C.P., it does involve a significant and unsustainable interference with the exercise of C.P.'s control and responsibility regarding the manner in which J.P. is raised. If it develops, after C.P. has been permitted to exercise that control and responsibility, that harm can be attributed to the decision to allow J.P. to reside in Pennsylvania, appropriate measures can be pursued for the protection of J.P. under laws governing custody, parental rights, protection of juveniles, etc. See *Albright v. Commonwealth*, 491 Pa. at 326, 421 A.2d at 160. It was not, however, appropriate for the Superior Court to interfere with parental prerogatives regarding J.P.'s place of residence, by addressing the issue of J.P.'s best interests and entering an order that J.P. leave Pennsylvania, when the case sub judice concerned only the question of whether C.P. should return to North Carolina.

The order of the Superior Court was issued without proper basis, and to the extent that it mandates the return of J.P. to North Carolina, it must be reversed. The portion of the order that requires a return of C.P. to North Carolina has been addressed separately in the companion case, *In the Interest of C.P.*, 516 Pa. 541, 533 A.2d 1001 (1987).

Order reversed in part.

HUTCHINSON, Former J., did not participate in the consideration or decision of this case.