WINFREE, Justice.
I. INTRODUCTION
The Interstate Compact for Juveniles (ICJ) governs the return of juveniles who have left their home states without permission. With her mother's permission, a juvenile left her home state to visit family friends in Alaska; she then refused to return home. The home state sought her return under the ICJ, and the Alaska superior court complied. The superior court found that it was not authorized to consider the juvenile's best interests and that the requisition paperwork demonstrated proof of entitlement for her return. We affirm the superior court's order, holding that the ICJ authorizes only the home state to consider a juvenile's best interests in this context and that proof of entitlement was established in this case.
II. FACTS AND PROCEEDINGS
In late April 2018, 15-year-old Jessica J.[1] traveled from Iowa to Alaska to spend the summer with family friends. Jessica's divorced parents shared legal custody; her mother, who retained primary physical custody, gave Jessica permission. Jessica's mother then changed her mind and told Jessica to return home. Jessica's mother booked several return flights for Jessica, the final on May 30.
On May 30 Jessica's mother reported to Iowa police that the Alaska family friends refused to send Jessica home; the police treated Jessica as a missing person. Alaska police located her at the family friends' home and indicated she was "safe until [her] mother c[ould] pay for plane fare out of Alaska." But the Iowa police still considered Jessica a missing person, and a week later Alaska police located her at a shelter, where she apparently had gone to avoid getting "the family that she was staying with in trouble if there were legal repercussions ... for staying in Alaska." Police transported her to a youth facility pending further legal proceedings.
The following day the State petitioned the Alaska superior court to "commence AS 47.15 Interstate Compact for Juvenile proceedings." The superior court appointed counsel for Jessica and held five hearings on *773 the matter. At the first hearing, the court appointed a guardian ad litem (GAL) for Jessica. The court acknowledged, but did not consider, a petition for a domestic violence protective order that Jessica's father, who also lived in Alaska, had filed on her behalf against her mother.
At the second hearing, the superior court dismissed the father's petition for a domestic violence protective order, but it noted that it would consider a new petition if Jessica's "attorney and/or her GAL now determine that she should have a [domestic violence] order." The court stated that "if, in fact, the mother started this on a false basis, which is that [Jessica] was missing or a runaway, that could affect whether or not the requisition from Iowa is, in fact, in order." The court also stated that if Jessica were returned to Iowa, there were "avenues other than living at home down there. And, in fact, [her] father could file for change of custody or whatever else he might think is appropriate for him to do."
Before the next hearing, Jessica's mother filed a petition and supporting documents in the Iowa court seeking Jessica's forced return under ICJ Rule 6-103(3).[2] The Iowa court filled out the responsive paperwork, which included a finding that Jessica "has run away; and that [Jessica's] continued absence from legal custody and control is detrimental to the best interest of [Jessica] and the public." Iowa's ICJ office sent the required paperwork to Alaska's attorney general, who, in turn, notified the superior court and requested a hearing.[3]
At the third hearing, the superior court formally notified Jessica of the requisition per ICJ Rule 6-103(6).[4] There was significant debate whether the ICJ applied, and the court believed that Jessica should "have the opportunity ... to present evidence to a court" that she should not be sent back. Noting mixed authority on whether holding states may consider a juvenile runaway's best interests before ordering return, the court stated that "there is good reason to have the hearing held." At the fourth hearing, the superior court denied the order to enforce the requisition, in part due to concerns about it being based on false information regarding whether Jessica was missing. The court ordered additional briefing on relevant case law and how to proceed.
By the fifth hearing, in September, the superior court judge assigned to the case had retired; the newly assigned judge found that Jessica was subject to the ICJ as a runaway. The court concluded that "there is no authority for this court to conduct a best-interests hearing" and that it would conduct a hearing only to determine whether the requisition paperwork was in order. At the final hearing, the superior court determined there was proof of entitlement and ordered Jessica's forced return to Iowa.
Jessica appeals, arguing that the superior court erred by failing to consider her best interests as part of the ICJ requisition proceeding and by finding there was proof of entitlement for her return to Iowa.
III. STANDARD OF REVIEW
"We use our independent judgment to review matters of ... statutory interpretation."[5] And we do so "according to reason, *774 practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[6]
IV. DISCUSSION
A. The ICJ Does Not Authorize The Holding State To Conduct A Best-Interests Analysis Before Ordering A Juvenile Runaway's Return.
1. The ICJ's plain language does not authorize the holding state to consider a juvenile runaway's best interests.
The ICJ governs the transportation of juveniles across state lines.[7] Nearly every state has adopted some version of the ICJ.[8] The ICJ declares that compacting states "recognize that each state is responsible for the proper supervision or return of juveniles ... who have absconded, escaped, or run away."[9] These states "also recognize that each state is responsible for the safe return of juveniles who have run away from home and in doing so have left their state of residence."[10]
ICJ Rule 6-103 governs the non-voluntary return of runaways. This rule provides that the runaway juvenile's legal guardian "shall petition the court of jurisdiction in the home/demanding state for a requisition."[11] If the home state judge determines, among other things, "that said juvenile's continued absence from legal custody and control is detrimental to the best interest of said juvenile and the public," the judge completes a Form I Requisition for Runaway Juvenile.[12] The form and requisition packet then are forwarded to the holding state, and the "court in the holding state shall inform the juvenile of the demand made for his/her return and may elect to appoint counsel or a [GAL]."[13] The "purpose of said hearing is to determine proof of entitlement for the return of the juvenile."[14] Although the ICJ rules do not define "proof of entitlement," if it "is not established, the [holding state] judge shall issue written findings detailing the reason(s) for denial."[15]
ICJ Rule 6-105 concerns the return of juveniles when there are reports of abuse or neglect. Under that section:
When a holding state has reason to suspect abuse or neglect by a person in the home/demanding state, the holding state's ICJ Office shall notify the home/demanding state's ICJ Office of the suspected abuse or neglect. The home/demanding state's ICJ Office shall work with the appropriate authority and/or court of competent jurisdiction in the home/demanding state to affect the return of the juvenile. ... Allegations of abuse or neglect do not alleviate a state's responsibility to return a juvenile within the time frames in accordance with the rules.[16 ]
Jessica argues that "[a]lthough not explicit, the ICJ's current language indicates that an inquiry into best interests is required" by the holding state. She argues that the ICJ allows the superior court to appoint a GAL whose "role in any case is to investigate and inform the court of the child's best interest." She argues that the GAL's role, read in conjunction with the holding state's requirement to conduct a hearing on proof of entitlement, "indicate[s] that a [holding state] court may take into consideration the juvenile's best interest."
But as the State notes, "[a]ppointment of a [GAL] is not mandatory." ICJ Rule 6-103(6) provides that the holding state "may elect to appoint counsel or a [GAL]." (Emphasis added.)
*775 Based on this specific wording, not only is a GAL not required, the GAL's role in protecting a juvenile's best interests would be the same as counsel's; representation, by counsel or GAL if the court elects to appoint either, is limited to contesting whether proof of entitlement has been established.[17]
Further, the ICJ accounts for the holding state's concerns about the juvenile's best interests, mandating that "[w]hen a holding state has reason to suspect abuse or neglect by a person in the home/demanding state, the holding state's ICJ Office shall notify the home/demanding state's ICJ Office of the suspected abuse or neglect."[18] After the holding state reports its suspicions, the "home/demanding state's ICJ Office shall work with the appropriate authority and/or court of competent jurisdiction in the home/demanding state to affect the return of the juvenile" to the legal guardian.[19] The ICJ mandates that "[a]llegations of abuse or neglect do not alleviate a state's responsibility to return a juvenile within the time frames in accordance with the rules."[20] The holding state thus must alert the home state when there are suspicions of abuse or neglect, but the home state is the proper forum to address those concerns.
Finally, under the expressio unius canon of statutory construction, the ICJ's requirement that the home state consider a juvenile's best interests, without also providing that the holding state consider the same, implies that the holding state should not also conduct the inquiry.[21] The juvenile's best interests are not overlooked; the home state expressly must find, albeit in a standardized form, that "said juvenile's continued absence from legal custody and control is detrimental to the best interest of said juvenile and the public."[22]
Based on this plain language, we find unpersuasive Jessica's argument that "the ICJ's current language indicates that an inquiry into best interests is required" by the holding state and that "a trial court must consider a non-delinquent juvenile's best interests prior to ordering the juvenile's requisition."
2. Legislative history also indicates that the holding state is not authorized to consider a juvenile runaway's best interests.
Jessica argues that ICJ changes indicate the holding state must consider a juvenile runaway's best interests. She contends that "[b]efore the Alaska legislature restructured [its version of the ICJ] in 2009, the statute included language providing for a court to consider a child's best interest" and that no legislative history exists indicating "that the Alaska legislature intended to prohibit Alaska courts from considering a child's best interest as part of their considerations under the ICJ."
Although Jessica is correct that prior ICJ language explicitly mandated considering a juvenile's best interests, that mandate has always been directed to the home state in ordering a requisition, not to the holding state complying with a requisition. Alaska initially adopted the ICJ in 1960;[23] a revised version was adopted in 2009.[24] According to legislative staff, the new version "replace[d] the old [ICJ] which was created in 1955.... The new [ICJ] ensures that all states will have identical language in their statutes which would help with compliance issues."[25]
*776 To ensure uniformity among compacting states, the newly established Interstate Commission, rather than individual states, would be responsible for creating and amending ICJ language.[26]
Although the governing body for language changed, the substantive requirement that the home state consider the juvenile's best interests did not. The original 1955 version of the ICJ, which governed in Alaska from 1960 through 2009,[27] explicitly placed the burden of determining the juvenile's best interests on the home state.[28] The text provided that after the legal guardian petitioned the home court, the home court judge could "hold a hearing thereon to determine whether for the purposes of [the ICJ] the petitioner is entitled to the legal custody of the juvenile, ... and whether or not it is in the best interest of the juvenile to compel his return to the state."[29] Although a hearing was not required, home state approval of a requisition required a finding that return was "in the best interest and for the protection of such juvenile."[30]
The ICJ's current version maintains the requirement that the home state court consider the juvenile's best interests, relocating the mandate from the ICJ's substantive text to the form the home state is required to sign before presenting the requisition paperwork to the holding state.[31] As the State contends, "[i]t was and remains the home state's responsibility or purview to determine the status of its juvenile resident .... Nothing in the ICJ [a]rticles or [r]ules has shifted or added this obligation to the asylum state." And although the "omission of the 'best interests' language was not a targeted revision," as Jessica argues, Alaska, as a holding state, has never had statutory authority to consider a juvenile's best interests as part of ensuring proof of entitlement, and nothing in Alaska's or the ICJ's legislative history suggests otherwise.
3. Neither case law from other jurisdictions nor policy considerations compels a different result.
Jessica makes several additional arguments why holding states should consider a juvenile's best interests before ordering return. She first points out that "cases from various other jurisdictions ... support the position that a child be afforded a best interest consideration." As she notes, courts in Montana, New York, Washington, and West Virginia have required the holding state to consider a juvenile's best interests.[32] But courts in North Carolina, Oregon, Pennsylvania, and Texas have ruled otherwise.[33]
We are persuaded by the Pennsylvania Supreme Court's analysis in In the Interest of C.P. , leading it to hold that the ICJ's "intent was that the requisitioning state, alone, should be charged with the duty of making findings regarding the juvenile's best interests."[34] The court noted that this "conclusion comports with the logical notion that, in the usual case, it will be the requisitioning state that has the more significant, established, and longer-term contacts with the runaway child, thus placing it in a better position to bring evidence to bear on the question of the juvenile's best interests."[35] Highlighting the ICJ's focus on expedited return of juvenile runaways, the court stated that "the need for inconvenient and duplicitous *777 determinations of the best-interests issue was one of the obstacles that the [ICJ] was no doubt designed to eliminate."[36] The court noted the "salient goal" of the ICJ to "promote interests in reciprocity and cooperation among the participating states" and stated:
The furtherance of those interests is dependent upon each participating state recognizing that sister sovereign states display no less jurisprudential excellence in dealing with issues involving the interests of runaway children. Deference to the best-interests determination of the requisitioning state is, therefore, an integral part of the scheme, and is a reason for having made mandatory an asylum state's return of juveniles that are subject to valid requisition orders.[37 ]
The court concluded that the ICJ provides for a hearing which "allow[s] challenges to the legality of the proceedings as a matter of right" and that "litigation may address matters of whether the form and contents of the requisition are in compliance, ... [but] it does not encompass relitigation of the best-interests issue that is properly in the realm of the requisitioning forum."[38]
We agree with the Pennsylvania court and note that the ICJ's "Bench Book for Judges" confirms this interpretation, providing that "[a]lthough it generally has been held that a runaway is entitled to a hearing prior to being returned to the custodial state, the nature of the hearing need not rise to the level of a full due process hearing."[39]
Considering other policy, Jessica argues that "Alaska courts routinely consider a child's best interest as part of any proceeding involving the placement of non-delinquent children." Comparing this case to parental custody and child in need of aid cases, Jessica argues that Alaska should conduct a best-interests inquiry in ICJ cases for consistency. But, as the State aptly notes, a case under the ICJ implicates different concerns than does a custody or child in need of aid case. It is not up to the holding state to determine the juvenile runaway's ultimate placement; that question is reserved for the home state, which "shall follow its procedures for reporting and investigating allegations of abuse or neglect of juveniles."[40] Again, it is not that the juvenile runaway's best interests never will be considered; rather, they will be considered in the home state's own proceedings. As a matter of policy, it is not necessary for the holding state to conduct its own best-interests analysis.
Jessica also argues that, in her case, the "Alaska court [is] in the best position to conduct best interest inquiries." She argues that "Alaska courts are much better poised to consider" her best interests because she "is subject to an Alaska custody order, and because there is an ongoing custody dispute between [her] parents" in Alaska courts. It may be that in this particular case Alaska has a substantial amount of information about Jessica and her parents, but this is not a reason to second-guess Iowa's determination that her best interests would be served by her return. As the Pennsylvania Supreme Court concluded in C.P. , the "salient goal" of the ICJ is "to promote interests in reciprocity and cooperation among the participating states."[41] That goal, which Alaska's legislature has adopted by implementing the ICJ, cannot be accomplished unless "each participating state recogniz[es] that sister sovereign states display no less jurisprudential excellence in dealing with issues involving *778 the interests of runaway children."[42]
Not conducting a best-interests analysis under the ICJ will neither strip Alaska's courts of the ability to rule in the parents' custody litigation nor take away Jessica's opportunity to challenge her mother's actions in Iowa courts. Second-guessing the analysis could lead to interstate discord, which would not further the ICJ's goal of uniformity and trust in other court systems. Although Alaska may have sufficient knowledge about Jessica's best interests in this particular case, this would be the exception and not the rule.
Jessica also asserts that "the ICJ does not provide an opportunity for the child to seek recourse once she is returned." This is inaccurate; she will have the same recourse as any other child whose custody is with an allegedly abusive parent. As the superior court noted at its second hearing, when Jessica is returned to Iowa there will be "avenues other than living at home down there. And, in fact, [her] father could file for change of custody or whatever else he might think is appropriate for him to do." If Jessica or others believe that her best interests are not served by being in her mother's legal or physical custody, the proper forum to litigate that issue is in the custody case, not in this ICJ proceeding.
4. Conclusion
The Iowa court found that it was in Jessica's best interests to be returned to Iowa. The ICJ does not give the holding state authority to make that determination. We therefore affirm the superior court's determination that it could not consider Jessica's best interests as part of the ICJ requisition proceeding.[43]
B. The Superior Court Did Not Err By Finding Proof Of Entitlement Existed.
Jessica argues that the superior court erred by finding there was proof of entitlement, for two reasons. She first argues that the court erred by relying solely on the Alaska ICJ Administrator's testimony that the paperwork was in order, without allowing Jessica to present her own evidence. She also argues that the underlying missing person's report was fraudulent, necessarily tainting the requisition paperwork. Both arguments lack merit.
Under ICJ Rule 6-103(3)(a), a petition for the non-voluntary return of a juvenile runaway must state the juvenile's name and birthday, as well as the petitioner's "basis of entitlement to the juvenile's custody, the circumstances of his/her running away, his/her location at the time application is made, and other facts showing that the juvenile is endangering his/her own welfare or the welfare of others and is not an emancipated minor." The petition must be verified by affidavit and accompanied by certified copies of documents establishing the entitlement claim.[44] After "it is determined that the juvenile should be returned, the judge in the home/demanding state shall sign" the requisition paperwork.[45]
Jessica's argument that she was not allowed to present evidence rebutting Alaska's ICJ Administrator's testimony is inaccurate. Before hearing testimony on proof of entitlement, the superior court stated that the "parties have an opportunity, if they want to present any argument, that the requisition is not in order." The court did not allow Jessica's mother to testify, stating that "[t]here is no requirement under the ICJ for a parent to testify to whether paperwork is in order. That's a determination made by the Interstate Compact Administrator." The court *779 then called on Alaska's ICJ Administrator, who stated that, under ICJ Rule 6-103, the requisition contained each of the required elements and that it had been reviewed by both an Iowa judge and Iowa's ICJ office prior to Alaska's "receipt and review of that document." The court found "the requisition is in order" and asked Jessica's counsel and GAL if they had anything to add.
The GAL then discussed, at some length, that the mother's original missing person's report was fraudulent because Jessica was not actually missing. The superior court impliedly found that this alleged misrepresentation did not suffice to negate proof of entitlement, ordering Jessica's return under the ICJ in a written order later that day. The court heard Jessica's evidence relating to the missing person's report; her argument that she was not allowed to present evidence on proof of entitlement therefore fails.
Jessica's argument that the underlying missing person's report was fraudulent, and therefore an invalid basis for the superior court's proof of entitlement finding, also fails. In Matter of Aubree C. the New York family court stated that the ICJ does "not require any specific documentation of entitlement for the non-voluntary return [of] the juvenile other than the requisition."[46] The court found that the ICJ lists certain examples but "does not require the submission of any specific supporting documentation."[47] The court in that case examined the paperwork before it, finding that it was not "in order" because it was not properly verified or signed by an appropriate authority and "the ground cited for return ... is not supported by documentation."[48] The court thus denied enforcing the requisition order.[49]
Jessica suggests that there was no "appropriate authority from the requisitioning state" in this case, like in Aubree C. , because an "ICJ official from Iowa was not present at the proof of entitlement hearing." But the Aubree C. court did not require the ICJ authority's presence at the hearing itself; the court required only that the requisition paperwork be signed by an appropriate authority.[50] Alaska's ICJ Administrator confirmed that the requisition paperwork in this case was proper: The petition included the necessary information and the basis of entitlement, which was that Jessica "did not return" and that her mother "is the custodian and guardian." The petition was verified by affidavit, certified copies of Jessica's birth certificate and the custody order were attached, and an Iowa judge signed the requisition form.
Jessica also argues that in the missing person's report her mother misstated the date she had last seen Jessica and that this "may have affected the validity of the Missing Person's report and, therefore, undermined the Alaska court's determination that the paperwork was 'in order.' " But even assuming the date's falsity, Iowa's requisition did not rely on the missing person's report, instead relying on Jessica's mother's petition, which stated that Jessica had run away and that her mother had legal custody. The petition alleged that Jessica was a "missing person in accordance to Iowa code" and did not include or allude to the missing person's report. ICJ Rule 6-103 does not require a missing person's report, and, therefore, its alleged invalidity in this case is not relevant to whether the superior court appropriately found the requisition paperwork in order.
Jessica finally contends that the superior court erred by failing to consider evidence regarding her best interests before finding that proof of establishment existed. This argument is just the "best interests" argument recast in proof-of-entitlement terms, and we reject it for the reasons discussed above.
The superior court properly considered whether the requisition paperwork was in order and did not err by finding proof of entitlement existed in this case. We therefore affirm its decision on this issue.
*780 V. CONCLUSION
We AFFIRM the superior court's ICJ order for Jessica to return to her home state.

We use a pseudonym to protect the minor's identity.

The rule provides: "When the juvenile is a runaway and/or an accused status offender, the legal guardian or custodial agency shall petition the court of jurisdiction in the home/demanding state for a requisition." ICJ Rule 6-103(3) (Interstate Comm'n for Juveniles 2018). The ICJ defines the "[h]ome state" as "the state where the legal guardian or custodial agency is located" and the "[h]olding state" as "the state where the juvenile is located." ICJ Rule 1-101. In this case, Alaska is the holding state, and Iowa is the home state.

ICJ Rule 6-103(4) provides that after receiving the required paperwork, the home state's ICJ office must "submit the requisition packet through the electronic data system to the ICJ Office in the state where the juvenile is located." Upon receipt, the holding state's ICJ office must send the paperwork "to the appropriate court and request that a hearing be held within thirty (30) calendar days of the receipt of the requisition." ICJ Rule 6-103(5).

ICJ Rule 6-103(6) provides: "The court in the holding state shall inform the juvenile of the demand made for his/her return and may elect to appoint counsel or a [GAL]. The purpose of said hearing is to determine proof of entitlement for the return of the juvenile."

State v. Planned Parenthood of the Great Nw. , 436 P.3d 984, 991 (Alaska 2019).

Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C. , 370 P.3d 1101, 1105 (Alaska 2016) (quoting Municipality of Anchorage v. Stenseth , 361 P.3d 898, 905 (Alaska 2015) ).

See generally AS 47.15.010.

Thomas A. Jacobs, 2 Children and the Law: Rights and Obligations , § 8:53 (2018).

AS 47.15.010.

Id.

ICJ Rule 6-103(3).

ICJ Rule 6-103(3)(b); ICJ Form I Requisition for Runaway Juvenile (2016) (emphasis added).

ICJ Rule 6-103(4), (6).

ICJ Rule 6-103(6)

Id.

ICJ Rule 6-105(1)-(2).

ICJ Rule 6-103(6) (providing that holding state must hold "hearing ... to determine proof of entitlement for the return of the juvenile").

ICJ Rule 6-105(1).

Id.

ICJ Rule 6-105(2).

See Ranney v. Whitewater Eng'g , 122 P.3d 214, 218 (Alaska 2005) (noting that expressio unius canon "establishes the inference that, where certain things are designated in a statute, 'all omissions should be understood as exclusions' " (quoting Croft v. Pan Alaska Trucking, Inc. , 820 P.2d 1064, 1066 (Alaska 1991) )).

ICJ Form I Requisition for Runaway Juvenile (2016).

Ch. 88, § 1, SLA 1960.

See AS 47.15.010, as amended by ch. 37, § 4, SLA 2009.

Minutes, Senate Finance Comm. Hearing on HB 141, 26th Leg. (Apr. 18, 2009) (Statement of Amanda Mortenson, Staff, Representative Coghill).

See AS 47.15.010.

Ch. 88, § 1, SLA 1960; ch. 37, § 4, SLA 2009.

Interstate Compact on Juveniles , art. IV, § (a) (1955).

Id .

Id.

See ICJ Form I Requisition for Runaway Juvenile (2016).

Application of Pierce , 184 Mont. 82, 601 P.2d 1179 (1979) ; Application of Chin , 41 Misc.2d 641, 246 N.Y.S.2d 306 (N.Y. Sup. 1963) ; In re Wiles' Welfare , 15 Wash.App. 61, 547 P.2d 302 (1976) ; In re M.D. , 171 W.Va. 209, 298 S.E.2d 243 (1982).

Matter of Teague, 91 N.C.App. 242, 371 S.E.2d 510 (1988) ; State ex rel. Juvenile Dep't of Multnomah Cty. v. Edwards , 15 Or.App. 677, 516 P.2d 1303 (1973) ; In the Interest of C.P. 516 Pa. 541, 533 A.2d 1001 (1987) ; In re Texas , 97 S.W.3d 744 (Tex. App. 2003).

533 A.2d at 1003.

Id.

Id. at 1004.

Id.

Id.

Interstate Commission for Juveniles, Bench Book for Judges & Court Personnel , 59 (2018); see also Jacobs , supra note 8 ("The asylum state has no jurisdiction to inquire into the juvenile's best interests, although at least one jurisdiction has held that when abuse is alleged, the asylum state may require the requisitioning state to produce evidence of a proposed plan for dealing with the juvenile when he or she is returned."); Phillip E. Hassman, Annotation, Extradition of Juveniles , 73 A.L.R.3D 700 § 2 (1976) ("Whether the extradition of a juvenile is in his best interest need not be determined by the asylum state before extraditing him under [the ICJ].").

ICJ Rule 6-105(3).

533 A.2d at 1004.

Id.

In her reply brief Jessica argues that due process requires the holding state to consider a juvenile's best interests. Although summarily raised before the superior court in reference to other jurisdictions' holdings, Jessica waived this issue by failing to raise it in her opening brief and by failing to provide legal citations or argument on any relevant due process standard. See Levi v. Dep't of Labor & Workforce Dev. , 433 P.3d 1137, 1147 n.37 (Alaska 2018) (deeming issue waived when not argued in opening brief or raised before superior court); Burns-Marshall v. Krogman , 433 P.3d 1121, 1126 n.16 (Alaska 2018) (deeming issue waived when party failed to provide citations or legal arguments).

ICJ Rule 6-103(3)(a)(i-iii).

ICJ Rule 6-103(3)(b).

61 Misc.3d 280, 79 N.Y.S.3d 478, 483 (N.Y. Fam. 2018).

Id.

Id. at 484-85.

Id. at 485.

Id. at 484.