No. 14784

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

IN RE THE APPLICATION OF

WALT AND JUDY PIERCE.

_____

Appeal from: District Court of the Tenth Judicial District,
            Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

        Berger, Anderson, Sinclair and Murphy, Billings, Montana
        James Sinclair argued, Billings, Montana

    For Respondent:

        Bradley Parrish argued, Lewistown, Montana

_____

                        Submitted: September 25, 1979

                          Decided: OCT 2 5 1979

Filed: OCT 2 5 1979


_____
Thomas J. Kearney          Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Walt and Judy Pierce, parents of Katherine Frances Pierce, petitioned this Court for a writ of supervisory control or other appropriate writ to secure the custody of Katherine. We deny the relief requested.

On November 29, 1978, Katherine Frances Pierce petitioned the District Court of the Tenth Judicial District, County of Fergus, under the provision of section 41-5-921, MCA, to place her with her maternal grandparents, Burton T. and Frances E. Raw, at Garneill, Montana. Her petition noted that on November 20, 1978, she ran away from her parental home in Powell, Wyoming. It alleged that she had suffered physical and mental abuse from her parents over a period of years, and that she desired to be placed in the custody of her grandparents. The cause was set for hearing on December 20, 1978. Bradley Parrish, counsel for Katherine Frances, sent a notice of the hearing to Mr. and Mrs. Walter Pierce at Powell, Wyoming. Hearing was held on December 20, 1978, which Mr. and Mrs. Pierce did not attend on advice of counsel, wherein the District Court found it had jurisdiction under the provisions of section 41-5-921, MCA, and placed Katherine Frances in the custody of her grandparents in lieu of placing her in a district guidance home.

Petitioners, Walt and Judy Pierce, petitioned the Juvenile Court, Park County, Wyoming, for an order giving them custody of Katherine Frances, under the Interstate Compact on Juveniles. In their petition they alleged that Judy had run away from home, that she was with her grandparents, the Raws, and that it was in the best interests and protection of Katherine Frances that she be returned to the

legal custody of her parents. The petition requested that an order be issued directing any peace officer or appropriate person in Montana to take Katherine Frances into custody and detain her. Such an order and requisition was issued by the Wyoming court on December 18, 1978. However, because they had to be processed through state offices in Helena, Montana, the order and requisition did not reach Fergus County, Montana, until sometime in January.

Upon receipt of the order and requisition from Wyoming, the Honorable LeRoy L. McKinnon set a hearing date for January 25, 1979. At that hearing all interested parties appeared with counsel. Testimony was given by both petitioners, by the grandparents, by Katherine Frances, by Sherry Pierce, Katherine's sister, and by Susan Briggs. Counsel were given time to submit briefs to the court, and on March 28, 1979, the court issued its findings of fact, conclusions of law and order, denying the requisition from the State of Wyoming. The findings of fact and conclusions of law stated:

> "1. That on the 30th day of November, 1978, the said Katherine Frances Pierce filed a petition herein under Section 10-1247, R.C.M. 1947 as amended, now Section 41-5-921 M.C.A., asking to be placed in the custody of her maternal grandparents in lieu of a District Youth Guidance Home. That hearing thereon came on regularly December 20, 1978; that order thereon issued December 27, 1978, placing said youth in the custody of her maternal grandparents, Burton T. and Frances E. Raw, of Garneill, Montana.
>
> "2. That on the 25th day of January, 1979, hearing came on regularly on Order and Requisition from County of Park, State of Wyoming, which apparently came in to the Juvenile Department, and had not been filed with the Clerk of Court.
>
> "3. That the parents of said youth appeared and testified that said youth has problems, and that they have made arrangements to place her in an institution. They further testified that they

-3-

had notice of the hearing on the petition of said youth, but being advised that they had not been properly served, they elected not to attend said hearing.

"4. That the maternal grandparents testified that they have no indication of any problem; that they get along well with said youth; that said youth takes care of her own room and helps her grandmother prepare meals and do up dishes; that said youth is enrolled in high school at Moore, Montana, and is earning A's and B's; that the said school teachers indicate no problem whatever, that said youth is doing very well. That an aunt of said youth who lives in a separate home on the same farmstead with the grandparents testified to the same effect as the grandparents.

"5. Said youth testified that there is no love in her parental home; that she was an unwanted child; that she has constantly been threatened with institutionalization; that she has been told that the minute she is eighteen, she's out of the house. That there is love and caring in her grandparents home, that she is accepted there, and that she wants to stay there.

"From the foregoing facts, the Court draws the following CONCLUSIONS OF LAW

"1. That the said Katherine Frances Pierce has no support to enable her to present her situation to a Court in the State of Wyoming.

"2. That it is not in the best interest of the said youth to be returned to the State of Wyoming.

"3. That the best interests of said youth, and of society at large would be served by leaving her in the care, custody and control of Mr. and Mrs. Burton T. Raw, Garneill, Montana."

Petitioners filed this petition for a writ of supervisory control to set aside the orders of Judge McKinnon dated December 27, 1978, and March 28, 1979, and to return Katherine Frances to her parents in the State of Wyoming pursuant to the Interstate Compact on Juveniles.

Three contentions are set forth by petitioners:

1. That the Honorable LeRoy L. McKinnon substituted his judgment for that of the judge of the demanding state, namely, the State of Wyoming, on what was the best interests of the child;

2.  That the Honorable LeRoy L. McKinnon exceeded the jurisdiction bestowed upon him pursuant to the Interstate Compact on Juveniles; and

3.  That the Honorable LeRoy L. McKinnon deprived the Wyoming parents of the minor child of custody of the child and that his order is in excess of the jurisdiction granted him.

We first look to the factual situation faced by Judge McKinnon when Katherine Frances filed her petition in his court on November 29, 1978.  Her petition revealed she had left her parental home, gave the reasons for leaving, and sought the protection of the court under section 41-5-921, MCA.  She was not, nor had she ever been, declared a delinquent child either in Wyoming or Montana, but was a runaway child.  While the above statute provides for placement in a district youth guidance home, the fact that the Tenth Judicial District had no such home did not of itself preclude Judge McKinnon from accepting jurisdiction of the cause.  Jurisdiction having attached, the cause properly remained before Judge McKinnon.  It was within his discretion to have her placed in a state institution or an approved aftercare program.  Because Katherine Frances was not a delinquent child, but one in need of a home with tender loving care, Judge McKinnon, in the exercise of his broad discretion, properly used that discretion in granting her request to be placed with her grandparents.

We are not faced here, as argued by petitioners, with the same facts or legal problems presented in In the Matter of Aschenbrenner (1979), ___ Mont. ____, 597 P.2d 1156, 36 St.Rep. 1282.  In that case the grandparents petitioned the court for a guardianship of their grandchildren and the

-5-

mother appealed the the trial court's decision. We reversed, holding that a guardianship proceeding is not a proper means to terminate a parent's constitutional right to custody of his or her child. Here, unlike Aschenbrenner, Katherine Frances is the petitioner under an entirely different statutory procedure.

Nor do we find our recent case of Wenz v. Schwartze (1979), ____ Mont. ____, 598 P.2d 1086, 36 St.Rep. 1360, controlling. This case will be discussed in our discussion of other issues raised by petitioners. Here, Katherine Frances filed her petition, as a youth in need of care, and later changed the same to request placement with her grandparents, and as of the date of hearing, November 29, 1978, the District Court properly assumed jurisdiction as requested.

The second issue challenging Judge McKinnon's right to continue jurisdiction once he was presented with the order and requisition from the State of Wyoming raises several issues. First, it must be decided if the Interstate Compact on Juveniles empowers the District Court to act beyond refusing to return a youth to a requisitioning state pursuant to a hearing under the Compact. Second, it must be determined if the Uniform Child Custody Jurisdiction Act (UCCJA) precludes the District Court from denying enforcement of the Wyoming decree and placing Katherine in her grandparents' custody.

Section 41-6-105, MCA, pertains to the first question presented under this issue. That section reads:

> "The courts, departments, agencies, and officers
> of this state and its subdivisions shall enforce
> this compact and shall do all things appropriate
> to the effectuation of its purposes and intent
> which may be within their respective jurisdictions."

The broad language of this section granting the courts of Montana the authority to "do all things appropriate" to carry out the purposes of the Compact should include the power to place a youth in a private home on determining the child should not be returned to the requisitioning state.

Beyond the statutory language, In Re Welfare of Wiles (1976), 15 Wash.App. 61, 547 P.2d 302, substantiates this interpretation of the court's power under the Compact. Although the Washington court did not specifically address the question before us, the practical effect of the decision was to place the youth involved in the matter in the custody of her mother in Washington despite the existence of a court order in Oregon granting custody of the child to the State of Oregon.

The second problem under this issue arises due to the December 18 order issued by the Wyoming court finding Walt and Judy Pierce entitled to legal custody of Katherine. This order meets the definition of "decree" set out in section 40-7-103(4), MCA, thus bringing the matter within the purview of the UCCJA.

Under the UCCJA, the District Court of Montana must have jurisdiction over the child and jurisdiction to modify an out-of-state decree before entering a valid decree in Montana. Wenz v. Schwartze, 598 P.2d at 1093. Section 40-4-211(1)(c)(ii), MCA, a portion of the UCCJA jurisdiction statute incorporated by reference, allows the District Court to invoke jurisdiction over a child present in the state when it is necessary to protect the child because of threatened mistreatment or abuse. Since the District Court found that to be the situation here, the court had jurisdiction over Katherine.

Regarding the enforcement of the Wyoming decree under the UCCJA, the Court stated in Wenz, ". . . before the recognition and enforcement provisions of the Act can be applied, the initial decree must be entered in conformity with strict notice requirements." 598 P.2d at 1095. See also section 40-7-114, MCA. If there is no compliance with the notice requirements of the UCCJA by the state entering the initial decree, Montana courts are not required to recognize and enforce the out-of-state decree. Wenz, 598 P.2d at 1096. Here, notice of the Wyoming hearing was not given to the Raws, the persons in physical custody of Katherine, contrary to the requirements of section 40-7-105, MCA. Under Wenz the District Court, therefore, was not required to recognize or enforce the Wyoming order.

The last issue challenges Judge McKinnon's order placing Katherine in her grandparents' home, alleging that he acted in excess of his jurisdiction and deprived the petitioners the custody of their minor child.

Petitioners argue that the District Court's order placing Katherine with her grandparents modified the Wyoming decree. Section 40-7-115, MCA, requires the Montana courts to defer to the courts of a state which first grants a custody decree. Under this section, Wyoming retains almost exclusive jurisdiction to determine Katherine's custody unless Wyoming no longer has jurisdictional prerequisites substantially in accordance with the UCCJA, or has declined to assume jurisdiction and the court of this state has jurisdiction. Wenz, 598 P.2d at 1096. Since the Wyoming court has not declined to assume jurisdiction, Montana courts must defer to Wyoming's courts with respect to modification unless those courts no longer have jurisdiction

-8-

under jurisdictional prerequisites substantially in accordance with the UCCJA. Making this determination entails once again consideration of the jurisdictional standards set out in section 40-4-211, MCA, this time to decide if the Wyoming courts still have jurisdiction over Katherine.

Section 40-7-103(5), MCA, defines "home state" as ". . . the state in which the child, immediately preceding the time involved, lived with his parents . . . for at least 6 consecutive months . . ." Under section 40-4-211(1)(a)(i), MCA, state courts have jurisdiction over children if the state is the child's home state. Reading these two sections together, the facts here show that the Wyoming courts retained jurisdiction over Katherine under the UCCJA. The District Court, therefore, did not have jurisdiction to modify the Wyoming court's custody decree.

We find that the interaction of the Interstate Compact on Juveniles and the UCCJA places the District Court in the following situation: the court has the authority under the Compact to deny Wyoming's requisition ordering Katherine be returned to Wyoming and place Katherine in the custody of her grandparents; under the UCCJA, the court is not required to recognize or enforce the Wyoming order, but the court is precluded from modifying the order.

Considering the March 28 order, the District Court merely concluded that Katherine's best interest would be served by having her in the custody of her grandparents and ordered the Wyoming requisition denied. The court did not modify the Wyoming order. This procedure appears to be allowed under the interaction of the Interstate Compact on

Juveniles and the UCCJA. Therefore, this Court should not set aside the District Court's March 28 order.

The petition for a writ of supervisory control is denied.

_____
                    Justice

We concur:

_____
    Chief Justice

_____

_____

_____
    Justices

Mr. Chief Justice Frank I. Haswell specially concurring:

I concur in the result.

_____
            Chief Justice