298 S.E.2d 243 (1982)
In re M.D., a Juvenile.
No. 15677.
Supreme Court of Appeals of West Virginia.
December 2, 1982.
Rodney T. Berry, Evans & Berry, Moundsville, for juvenile.
Janet Frye Steele, Asst. Atty. Gen., Charleston, for State.
HARSHBARGER, Justice:
The Athens County (Ohio) Common Pleas Court put M.D. in the permanent custody of Athens County Children's Services because her parents had neglected her. She ran away to her older sister's home in Moundsville, Marshall County, West Virginia.
The Ohio court found that it was in her best interest to be returned to Children's Services: its order was forwarded to Marshall County as a requisition[1] under the *244 Interstate Compact on Juveniles, W.Va. Code, 49-8-1, et seq.
She was apprehended in Marshall County and her temporary custody was awarded to the West Virginia Department of Welfare pending a final hearing about her return to Ohio. The department left her with her sister, whom she later nominated to be her guardian. W.Va.Code, 44-10-4. On July 28, 1982, the juvenile court of Marshall County ordered that she be returned to Ohio, but suspended its order to allow her this appeal. We extended the stay when we agreed to hear her appeal.
Our trial court refused to go behind the Ohio papers to determine whether M.D.'s rights were adequately protected in Ohio, or whether her return is in her "best interest".
The Interstate Compact on Juveniles was adopted in 1963. Code, 49-8-1 presents these legislative findings and declarations:
(1) That juveniles who are not under proper supervision and control, or who have absconded, escaped or run away, are likely to endanger their own health, morals and welfare, and the health, morals and welfare of others; (2) that the cooperation of this State with other states is necessary to provide for the welfare and protection of juveniles and of the people of this State.
Article IV of the Compact, Code, 49-8-2, deals with the return of runaways. A runaway is "a juvenile who has not been judged delinquent but who has run away without the consent of such parent, guardian, person or agency"a status offender.[2] Prior to ordering return of a runaway, a judge in the demanding state must "determine whether for the purposes of this compact the petitioner is entitled to the legal custody of the juvenile, whether or not it appears that the juvenile has in fact run away without consent, whether or not he is an emancipated minor, and whether or not it is in the best interest of the juvenile to compel his return to the state." (Emphasis supplied.)
After a juvenile has been put into custody in the receiving state and counsel or a guardian has been appointed for him, the Compact instructs:
If the judge of such court [receiving the requisition] shall find that the requisition is in order, he shall deliver such juvenile over to the officer whom the court demanding him shall have appointed to receive him. The judge, however, may fix a reasonable time to be allowed for the purpose of testing the legality of the proceeding. (Emphasis supplied.)
The State argues that the only test of the legality of such proceeding consists of ascertaining that the requisition contains all required information. M.D. maintains that to protect her constitutional due process rights there must be a hearing about whether it is in her best interest to be returned to the demanding state.
There are very few Interstate Compact on Juveniles cases dealing with runaways, as opposed to delinquent children.
In In Re Welfare of Wiles, 15 Wash.App. 61, 547 P.2d 302 (1976), Oregon's Children's Services Division of the Department of Human Resources had custody of Lenore Wiles, who ran away to Washington state to be with her mother. An Oregon juvenile court sent a requisition to Washington for her return, and Lenore asked for a hearing. The trial judge believed, as did ours, that he had no discretion under the Interstate Compact to determine whether a return to Oregon would be in Lenore's best interest, but the Washington Court of Appeals disagreed. It stated:
We hold that the trial judge erred in concluding that he had no discretion and that he was required to honor Oregon's requisition if he found it to be "in order." Consideration for Lenore's welfare requires the exercise of sound judicial discretion after a careful consideration of her present circumstances before ordering *245 that she be returned to "institutional custody." Accord, Application of Chin, 41 Misc.2d 641, 246 N.Y.S.2d 306 (1963). Id., 547 P.2d, at 304.
The Montana Supreme Court has also concluded that a trial court must determine what is in a child's best interest before returning the child to a requisitioning state. In Application of Pierce, Mont., 601 P.2d 1179 (1979), Katherine ran away from her parents' home in Wyoming to her grandparents in Montana. Her parents obtained a requisition under the Interstate Compact from a Wyoming court. After a hearing, the Montana court decided that it was not in Katherine's best interest to be returned to Wyoming, and the Montana Supreme Court affirmed. It emphasized that Katherine was not "a delinquent child, but one in need of a home with tender loving care, [and the trial judge] in the exercise of his broad discretion, properly used that discretion in granting her request to be placed with her grandparents." Id., 601 P.2d at 1182. The court found authority for its decision in a section comparable to our Code, 49-8-6,[3] which grants state courts the authority to "do all things appropriate to the effectuation of [the Compact's] purposes and intent." That "should include the power to place a youth in a private home on determining the child should not be returned to the requisitioning state." Id., 601 P.2d at 1183. See also In the Matter of Brenda Lee G., 88 Misc.2d 899, 388 N.Y.S.2d 229 (1976), wherein a child who had neither been judged delinquent nor convicted of a criminal charge was not sent from her home state, New York, to requisitioning Florida.
The State cites us to In the Matter of Edwards, 15 Or.App. 677, 516 P.2d 1303 (1973), as authority for the proposition that there is no requirement in the Compact that a trial court determine whether it is in a child's best interest to be returned to a requisitioning state. Even if Edwards is correct on its facts, it is distinguishable from this case because Edwards was in custody awaiting trial for attempted armed robbery in Oklahoma when he ran away to Oregon. M.D. is not claimed to be a criminal.
We are particularly concerned about the impact of a nondiscretionary decision by a West Virginia court to return a runaway, that is, a juvenile never having been adjudged delinquent, without at least a minimal investigation into the juvenile's best interest, which must be the paramount concern in all juvenile cases.
This fifteen-year-old was taken from her natural, though neglectful, family and placed in a foster home, no doubt, in the context of events in Ohio, in her best interest. However, since that decision was made (and we do not have information about what parties participated in it), we know that her sister wishes to assume responsibility for her well-being, has apparently done so successfully, and that the child prefers to live with her sister.
West Virginia law gives a young person of fourteen or older the right to nominate his or her own guardian. Code, 44-10-4; S.H. v. R.L.H., W.Va., 289 S.E.2d 186 (1982); Garska v. McCoy, W.Va., 278 S.E.2d 357 (1981); J.B. v. A.B., W.Va., 242 S.E.2d 248 (1978).
We must not forget that the legislative intent in adopting this Compact, was to protect runaways who are likely "to endanger their own health, morals and welfare, and the health, morals and welfare of others." Code, 49-8-1. M.D. apparently is not within that description, but is safe and well cared for in her sister's home. A juvenile court must determine whether a requisitioned child falls within the legislative declaration of persons for whose benefit the Compact exists.
We remand this case for a hearing in Marshall County on whether it is in her best interest to be returned to Ohio.
Reversed and remanded.
NOTES
[1] This writer is uncomfortable using the word "requisition" to describe the paper or process by which a child is sought to be removed against its will from one state to another. He considers "requisition" to be that procedure by which one gets a tool from a toolroom; or supplies from a quartermaster. When we characterize a proceeding in such a way that it seems facially routine, we obscure what is really extradition. We are not dealing with a slip of paper calling for delivery, to the cook, from stores, of a pound of butter.
[2] Our Court has dealt with children's rights as status offenders in State ex rel. B.S. v. Hill, W.Va., 294 S.E.2d 126 (1982); State ex rel. H.K. v. Taylor, W.Va., 289 S.E.2d 673 (1982); State ex rel. C.A.H. v. Strickler, W.Va., 251 S.E.2d 222 (1979); State ex rel. Harris v. Calendine, W.Va., 233 S.E.2d 318 (1977).
[3] W.Va.Code, 49-8-6:

"The courts, departments, agencies and officers of this State and its subdivisions shall enforce this compact and shall do all things appropriate to the effectuation of its purposes and intent which may be within their respective jurisdictions."