839 P.2d 165 (1992)
In the Matter of the Application for a Writ of Habeas Corpus for C.A.D., a minor child.
Karen Nettie DRAPER, Plaintiff-Appellee,
v.
David ROBERTS and Jennie Roberts, Defendants-Appellants.
Nos. 75,437, 75,438.
Supreme Court of Oklahoma.
June 23, 1992.
As Corrected June 25, 1992.
As Amended on Limited Grant of Rehearing October 13, 1992.
Fred Kramer, Duncan, and Michael E. Grant, Hughes and Nelson, Oklahoma City, for defendants-appellants.
Karen A. Pepper Mueller and Richard C. Ogden, Carson and Mueller, and Floyd W. Taylor, Miskovsky, Sullivan, Taylor and Manchester, Oklahoma City, for plaintiff-appellee.

*167 THE TRIAL COURT'S ORDER DENYING THE WRIT OF HABEAS CORPUS AND AWARDING CUSTODY IS VACATED AND THE TRIAL COURT IS ORDERED TO STAY ALL PROCEEDINGS FOR THIS CHILD'S CUSTODY PENDING THE TEXAS LITIGATION'S FINALITY
OPALA, Chief Justice.
The dispositive issue for review is whether the trial court erred by exercising jurisdiction under the Uniform Child Custody Jurisdiction Act [UCCJA or the Act][1] when an initial custody action pending in Texas had not been stayed. We answer in the affirmative.

I.

THE ANATOMY OF LITIGATION

A. The Factual Background[2]
The parties are the mother of a twelve-year-old child[3] and his Texas custodians [the custodians or the Roberts].[4] The mother and child went to live with the *168 Roberts in Texas when the child was about two years old. When the mother returned to Oklahoma six months later, she left the child in the Texas couple's care. Since then the custodians have been providing the child with guidance, life's necessities and parental comfort, except for short periods when he resided with his mother.[5]

B. The Texas Proceedings

During a Christmas visit to Texas in 1989, the mother told the custodians this would be the boy's last year with them. The following March the custodians commenced conservatorship proceedings in Texas to gain the child's custody.[6] Before the mother was served with Texas process, she went to the custodians' home, picked up the child as he stepped from the school bus and brought him to Oklahoma.[7] The following day the custodians sought and were granted in the Texas action an ex parte order that the child be found and placed in the county sheriff's custody.

C. The Oklahoma Proceedings

The custodians' Oklahoma quest for custody was by habeas corpus brought two days later in the district court. Their claim was based on the Texas ex parte order for writ of attachment and temporary custody of the child. They sought the child's return to Texas where litigation over his custody could continue. The same day the habeas corpus application was filed, the mother petitioned the district court to assume jurisdiction and grant her the child's exclusive custody. The two Oklahoma cases were consolidated. After a phone conversation with the Texas judge, the Oklahoma court concluded that the latter (a) deferred the jurisdictional decision to him and (b) agreed to abide by his decision. The Texas court's agreement was not reduced to writing nor did the Texas court stay its proceedings.[8] In short, the Oklahoma *169 court merely assumed Texas was not exercising jurisdiction. After an evidentiary hearing the Oklahoma court held that (1) the custodians lacked standing to bring an application for habeas corpus, (2) Oklahoma has home-state jurisdiction because it is the mother's domicile, and (3) custody should remain with the child's mother and father.[9]

D. The Subsequent Proceedings

After the Oklahoma court decided the consolidated cases, and while this appeal was pending,[10] the Texas court awarded the child's custody to the custodians.[11] That court acknowledged the Oklahoma judge's phone call but denied that it agreed to relinquish jurisdiction of the cause.[12]We retained this appeal to set guidelines for Oklahoma courts to follow when an initial UCCJA custody action is pending in another state that is exercising home-state jurisdiction.[13]

II

JURISDICTION UNDER THE UNIFORM CHILD CUSTODY JURISDICTION ACT AND THE FEDERAL PARENTAL KIDNAPPING PREVENTION ACT

A. The Appeal

On appeal the custodians urge that the Oklahoma trial judge erred by refusing to recognize the Texas court's "vested jurisdiction" under the UCCJA. They argue that 10 O.S.Supp. 1982 § 1608(A)[14] bars an Oklahoma court from exercising jurisdiction if another custody proceeding was pending in a sister state's court when the petition was filed. The sister state must be exercising jurisdiction substantially in conformity with the UCCJA.[15] According to the custodians, the Oklahoma court's exercise *170 of jurisdiction violates the Parental Kidnapping Prevention Act [PKPA][16] as well as state law. They contend the PKPA and UCCJA proscribe an Oklahoma court from proceeding under these circumstances absent a Texas-court stay of its proceedings.
The mother urges (1) the custodians lacked standing to petition the Oklahoma court for habeas corpus, (2) the ex parte order for temporary custody could not be enforced because the mother had not been afforded due process and (3) Texas lacks subject matter jurisdiction under the UCCJA.[17] She argues her own domicile in Oklahoma gives this state exclusive jurisdiction to determine the child's custody. According to the mother, events that happened after the trial estop the custodians from claiming relief from this court.[18]
We agree with the custodians that both the UCCJA's § 1608(A)[19] and the PKPA's § 1738A(g)[20] bar the Oklahoma trial court from exercising jurisdiction under the circumstances present here.

B. Application of the Acts.

Oklahoma's UCCJA governs initial custody proceedings.[21] An Oklahoma court may enter a custody decree if one of four alternative jurisdictional prerequisites[22] are present: (1) if Oklahoma is the child's home state (or recently has been and a parent continues to live in the state), (2) if it is in the child's best interest for the state to assume jurisdiction because the child and his parents or the child and a contestant have a significant connection to the state and substantial evidence is available here concerning the child's present or future *171 care, (3) if the child has no home state and it would be in the child's best interest for the state to assume jurisdiction, or (4) if the child is present in the state and has been abandoned or abused.[23]
Oklahoma custody proceedings must be consistent with the PKPA.[24] Otherwise this state's custody orders would not be enforceable in other states.[25] The PKPA provides that although a state may meet one or more of the four prerequisites that we have described, that state may not proceed if another state is exercising jurisdiction consistently with the federal *172 act's provisions.[26]A similar prohibition in the UCCJA proscribes an Oklahoma court's cognizance if a custody action is pending in another state exercising jurisdiction "substantially in conformity" with the Act.[27] These mechanical "first-in-time" rules are designed to prevent jurisdictional squabbles by limiting the court's jurisdiction to act in certain custody matters.[28]
In G.S. v. Ewing[29] we recently considered an Oklahoma court's continuing jurisdiction under the UCCJA to modify a child custody decree. We noted there that under the UCCJA initial and modification cognizance differs. Initial jurisdiction ordinarily resides in the state with the closest connections to the child and to information about his present and future well-being.[30]We recognized in Ewing that § 1608(A) limits an Oklahoma court's authority to hear a custody dispute if there is a suit pending in another state's court.[31]
The mother urges us to focus our jurisdictional inquiry on enforceability of the temporary ex parte order. She contends the Texas court was not exercising jurisdiction substantially in conformity with the Act when she filed the Oklahoma litigation because the Texas order was issued ex parte and was temporary. She urges she had no opportunity to appear and respond in Texas.
A review of extant jurisprudence from other states reveals that not all courts agree on the meaning of the phrase, "exercising jurisdiction consistently with the federal act" or "exercising jurisdiction substantially in conformity with the UCCJA." Some courts have held that unless proper notice has been given under the acts, no action is pending.[32] Others recognize that subject matter jurisdiction is not lost because the notice requirements have not yet been satisfied.[33]
Before making a decree under the act, a court shall give the contestants reasonable notice and opportunity to be heard. 10 O.S. 1981 § 1606;[34] 28 U.S.C. § 1738A(e).[35] Neither the § 1738A(g) nor *173 the § 1608(A) jurisdictional bars require that the first state shall have issued an enforceable order before the second state is barred from proceeding.[36] The better rule requires deference to Texas if the action was pending under Texas law when the Oklahoma proceedings were filed. Recognition of priority based upon the commencement of out-of-state forum litigation is consistent with prior Oklahoma cases and the purposes of the pertinent custody acts.[37]This principle prevents two or more states from exercising concurrent jurisdiction[38]and discourages an interstate race for a more favorable forum.
An Oklahoma court must, when it learns an initial custody proceeding is pending in another state, make a critical two-part inquiry: (1) Was another state exercising home-state jurisdiction substantially in conformity with the UCCJA when the Oklahoma petition was filed? and (2) If so, did the other court stay its litigation?
The answer to whether the Texas suit was pending lies in that state's Family Code at § 11.07[39] and in its rules of civil procedure. The cited statute provides that a suit affecting the parent-child relationship shall be commenced by filing a petition. According to the Texas Rules of Civil Procedure, a civil suit in the district or county court shall be commenced by a petition filed in the clerk's office.[40] Clearly, the petition's filing  rather than service of process  triggered the Texas litigation.[41]
The Texas litigation was at its earliest stage when the Oklahoma actions were filed; hence the inquiry to determine whether the former proceeding substantially conformed to the Texas UCCJA must focus on its pleadings. Would the custodians' allegations  taken as true for purposes of this determination  give Texas home-state jurisdiction under the UCCJA?
"Home state" means the state where the child was living with his parents, a parent, or a person acting as a parent, for at least six consecutive months immediately preceding the time involved.[42] A *174 "person acting as a parent" is one who has physical custody of a child and claims a right to custody.[43] Under Texas law a person who has possession and control of a child for at least six months immediately preceding the filing of the petition may bring a claim for custody.[44] The mother contends the Texas court lacked home-state jurisdiction because the custodians did not have physical custody of the child at the time the Oklahoma litigation was filed. The critical time for testing whether the custodians were "acting as parents" and "claim a right to custody" was the point in time when the Texas litigation was filed. The custodians allege that the mother voluntarily placed the child into their actual possession, care and control in September 1981 where he has remained  except for four very brief periods. In assessing whether the Texas court is exercising jurisdiction substantially in conformity with the UCCJA, the Oklahoma court may not test the truth of the custodians' allegations.[45] Rather the Oklahoma court must stay its own proceedings if the Texas litigation appears to be in substantial UCCJA conformity.
The Oklahoma court attempted to avoid a jurisdictional dispute by conferring with the Texas judge, but it did not secure for the record an order staying the foreign litigation. Neither did it file in the custody registry a communication from the other state informing this state of a finding that Oklahoma is the more appropriate forum, as prescribed by 10 O.S. 1981 § 1609(I).[46] The Oklahoma court has no power to stay a Texas action;[47]discretion to decline jurisdiction in favor *175 of a more appropriate forum rests with the Texas court.[48] Reliance solely upon oral communications between judges can cause confusion. The better rule of practice and the one we adopt today is that, without written notification that the sister-state court yields jurisdiction  filed in the cause  Oklahoma must defer to the pending first-commenced forum litigation. 10 O.S.Supp. 1982 § 1608(A);[49] 28 U.S.C.A. § 1738A(g).[50]
The trial court's order denying the writ of habeas corpus and awarding custody of the child, C.A.D., to his mother and father is vacated. The trial court is ordered to stay all Oklahoma battles for his custody pending finality of the Texas litigation. Yet to be decided is whether any Texas orders for this child's custody are enforceable in Oklahoma within the parameters of 28 U.S.C.A. § 1738A.[51]
LAVENDER, HARGRAVE, KAUGER, SUMMERS and WATT, JJ., concur.
SIMMS, J., concurs in part and dissents in part.
HODGES, V.C.J., and ALMA WILSON, J., dissent.
ALMA WILSON, dissenting:
The majority opinion interprets "where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination", in the federal Parental Kidnapping Prevention Act,[1] to mean the state in which a request for a custody determination is first-in-time filed. I cannot accede to such an interpretation of a federal full faith and credit statute.[2] Implicit in the statutory words "is exercising jurisdiction" is congressional intent that the other state has the parties before it and has determined it *176 is the most appropriate state to make a custody determination and, therefore, is exercising jurisdiction. Accordingly, I respectfully dissent.
Appellant, Jennie Roberts, claims her deceased son is the natural father of the twelve year old child, C.A.D. Appellant, David Roberts, is the present spouse of Jennie Roberts. In March, 1990, the minor child was residing with appellants and attending school in Texas, with the permission of appellee, Karen Nettie Draper, natural mother of the minor child. On March 2, 1990, appellants filed an action in Texas seeking appointment as conservators of the minor child. On March 5, 1990, a citation for personal service upon appellee was issued by the Texas court. Prior to personal service of the Texas summons, on March 13, 1990, appellee returned the minor to Oklahoma. On March 14, 1990, the Texas court issued an ex parte order placing temporary custody of the minor child with the appellants. On March 16, 1990, appellants filed an action for writ of habeas corpus in Oklahoma County district court, asserting right to custody of the minor child pursuant to the Texas ex parte order. Appellee filed a separate action requesting the Oklahoma County district court to assume jurisdiction and to make a custody determination of her minor child. Notice of the two Oklahoma actions were duly served upon the parties.
Notwithstanding the absence of personal service of notice of the Texas conservatorship proceeding upon the appellee prior to determining its jurisdiction over the custody dispute, the Oklahoma County district court communicated by telephone with the Texas court. At the time of this telephone communication, the Texas court had not determined its jurisdiction over the custody dispute.[3] The two pending custody actions between the parties were consolidated and trial was had. Upon a full evidentiary hearing,[4] the Oklahoma district court determined that Oklahoma has jurisdiction over this child custody dispute;[5] ordered that *177 custody of the minor child should be and is with the natural mother, appellee; and, denied appellants' application for a writ of habeas corpus. Appellants now seek reversal of that custody order, asserting the lack of jurisdiction of the Oklahoma County district court.
Subsequent to the conclusion of the custody proceedings before the Oklahoma district court the following events occurred. The reputed natural father of the minor child (named as father on the birth certificate) removed the minor child from Oklahoma and delivered him to appellants in Texas. Appellee voluntarily accepted service of notice of the Texas conservatorship proceeding. Upon default of the appellee, the Texas court proceeded to determine its jurisdiction of the custody dispute, finding that Texas did not agree to allow Oklahoma to determine jurisdiction. The Texas court determined that Texas is the appropriate state to determine custody of the minor child. The Texas court refuses to give full faith and credit to the Oklahoma child custody order.
The Appellants' apparent present position in the Texas court is that Oklahoma's fully litigated custody order is not entitled to full faith and credit, in Texas, while, in this Court, they assert that Oklahoma must give full faith and credit to the Texas ex parte order. In deciding this jurisdictional dispute between competing states, the majority opinion interprets the federal Parental Kidnapping Prevention Act as requiring the Oklahoma district court to refrain from exercising jurisdiction in this child custody dispute in "deference to the first-in-time [commencing of] out-of-state forum litigation." I disagree.
The Parental Kidnapping Prevention Act does not establish a procedural "race to the court house" test to determine jurisdiction between competing states. Rather, it requires a state to refrain from exercising concurrent jurisdiction over a custody dispute where another state has determined that it has jurisdiction over the parties and the child custody dispute and the other state is exercising that jurisdiction; and, it requires all states to give full faith and credit to the first state's ensuing custody order. Because Oklahoma was the first state to determine that it had jurisdiction and to exercise that jurisdiction, Oklahoma's custody order entered below is the "first state's ensuing custody order." Texas' ex parte order simply does not rise to the dignity of an exercise of jurisdiction consistent with the provisions of 28 U.S.C. § 1738A.
The federal Parental Kidnapping Prevention Act provides:
§ 1738A. Full faith and credit given to child determinations
(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

(b) As used in this section, the term  (3) "custody determination" means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;
(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any person whose parental rights have not been previously terminated and any person who has physical custody of a child.
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination. [Emphasis added.]
Section 1738A does not require nor allow jurisdictional preference to a state for first-in-time filing nor for ex parte orders. It speaks to "custody determinations made *178 consistent with the section"; "reasonable notice"; "temporary and permanent orders"; and "exercise of jurisdiction consistent with the section." Fundamental in personam jurisdiction over the contestants is clearly a contemplated prerequisite to the exercise of jurisdiction consistent with § 1738A. The Texas court did not attain in personam jurisdiction over the natural mother herein nor had it determined its jurisdiction prior to the Oklahoma court's determination that it had jurisdiction of the child custody dispute and the Oklahoma court's exercise of jurisdiction. Accordingly, the Texas court could not have been exercising jurisdiction over the parties and the child custody dispute consistent with § 1738A at the time the Oklahoma court first exercised jurisdiction over this dispute.
Section 1738A does not establish jurisdiction of child custody disputes in the first instance, as if it were a venue statute. It establishes national standards for a competing court of one state to determine 1) its jurisdiction and 2) the effect to be given to decisions of sister states.[6] The United States Supreme Court has concluded that these statutory national standards prohibit a state, such as Texas in the instant dispute, from exercising concurrent jurisdiction once another state, such as Oklahoma, exercises jurisdiction consistent with § 1738A; and that "all States must accord full faith and credit to the first State's ensuing custody decree.[7]
Research has revealed no federal jurisprudence deciding whether a state is exercising jurisdiction consistent with § 1738A because it issues an ex parte order prior to service of process upon all contestants. However, in Arbogast v. Arbogast,[8] the West Virginia appellate court refused to give full faith and credit to another state's custody order, concluding that § 1738A requires that the decreeing state must have jurisdiction over the parties. And, in In re Custody of Thorensen,[9] the Washington appellate court refused to give full faith and credit to a Florida ex parte temporary order, even though custody was originally fixed in the Florida divorce.
The parties in this matter have enjoyed de facto shared custody of the minor child, C.A.D., and during every year of his twelve year life, C.A.D. has been a de facto resident of both states, Texas and Oklahoma. When C.A.D.'s natural mother announced that she intended to terminate the de facto shared custody arrangements and become the sole custodian for her son in Oklahoma, the Texas custodians filed a conservatorship in Texas. Before service of process of the Texas conservatorship could be had upon her, the natural mother removed the child from Texas to Oklahoma. Again, before service of process in the Texas proceeding, the Texas custodians secured an ex parte temporary child custody order in the Texas conservatorship. Armed with this Texas ex parte order, the Texas custodians sought a writ of habeas corpus in the Oklahoma district court. The natural mother filed a separate custody proceeding in the Oklahoma district court. With all the parties before it and upon telephone consultation with the Texas court, the Oklahoma district court determined it had jurisdiction under the U.C.C.J.A. and § 1738A.
Because § 1738A does not require a state to defer to the "first-in-time out-of-state forum litigation" and because Texas had not exercised jurisdiction over the parties and the child custody dispute consistent with § 1738A prior to exercise of jurisdiction by the Oklahoma district court, I would affirm the determination that the Oklahoma district court properly exercised jurisdiction below.
NOTES
[1] 10 O.S. 1981 §§ 1601 et seq. Although the Act has been amended, the changes do not affect this proceeding. See 43 O.S. 1991 § 501 et seq. References in this opinion are to the law in effect when the cause arose.
[2] The mother filed a motion to require the custodians to amend their brief-in-chief to comply with this court's Rule 15 or in the alternative to strike the brief. Our review has disregarded any facts that were not a part of the record. School records, Sunday School attendance records and the custodians' cancelled checks document the child's periods of residence in Texas.
[3] The child, C.A.D., was born April 28, 1980 to K.N.D. and D.A.D.
[4] We refer to David and Jennie Roberts, appellants, as the child's custodians. They have had physical custody of the child for much of his life. The child's legal custody is the subject of this dispute. The custodians' lack of blood relationship to the child does not mean that they lack status to seek his custody under the UCCJA. See infra Part II.B. and note 43 for a discussion of UCCJA status for "persons acting as parents."

The child's father [D.A.D.] is not a party to the Oklahoma litigation, but the Oklahoma court awarded the child's custody to both D.A.D. and the mother.
[5] The custodians cared for the child during most of his early childhood but returned him to Oklahoma for kindergarten. The boy spent the summer after kindergarten in Texas. Except for a few months at the beginning of first, third, and fourth grades, the boy's entire schooling has been in Texas. The mother visited on holidays. The child spent most of the summers with his mother, but the custodians visited him in Oklahoma.

The following schedule identifies the location and dates of the child's school attendance until the custody action was filed.

Activity Grade Entered Left
OK: attended in Norman K 9/85 5/86
OK: entered and left 1 9/86 12/2/86
TX: entered 1 12/10/86 5/87
TX: remained 2 8/87 5/88
OK: entered and left
Oklahoma City 3 9/88 11/88
TX: entered and finished 3 11/88 5/89
OK: entered and left
Oklahoma City 4 9/89 10/89
TX: entered and left Texas 4 10/89 3/13/90

[6] The custodians allege that the Mother's continued sole conservatorship of the child would be harmful to his welfare and that their appointment as conservators would be a positive improvement for the child.
[7] The parties dispute whether the Texas summons was served before the mother filed the Oklahoma custody action. This issue need not be decided since the Texas action was "commenced" by filing the petition. See infra Part II B. and notes 39 & 40.
[8] The Oklahoma court's understanding of the telephone agreement is set out in its July 20, 1990 order:

"The Court, having on the 21st day of March, 1990 communicated, in the presence of all counsel, with the Honorable Robert Stem, District Judge of the 82nd Judicial District Court of Falls County, Texas, pursuant to this Court's being aware of action No. 30,159 filed on the 2nd day of March, 1990, said action being styled "ORIGINAL SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP; PETITION FOR ORDER OF SOLE MANAGING CONSERVATORSHIP," with corresponding temporary order and Writ of Attachment issued ex parte by the Texas Court on March 14, 1990, which actions involved the identical parties as those herein, and the minor child, [C.A.D.], date of birth April 28, 1980 (hereinafter `child'); and pursuant to said phone communications, both Courts agreeing that the Honorable David Harbour should make a finding as to which Court should have jurisdiction in all matters affecting the said minor child, by which decision the Texas Court would abide and, further, that the Honorable David Harbour should determine whether a Writ of Habeas Corpus should lie... ."
[9] Because the Oklahoma court should not have assumed jurisdiction to decide these issues, we do not consider whether the court erred in denying the writ of habeas corpus or awarding custody to the mother and father. A correct understanding of home-state jurisdiction is essential for application of the guidelines we set today for initial custody actions under the UCCJA. We hence hold that the mother's domicile does not govern home-state jurisdiction. 10 O.S. 1981 § 1604(5). See infra Part II B. and notes 42 & 43 for an explanation and definition of home-state jurisdiction.
[10] We take judicial notice of the subsequent Texas proceedings from records in related litigation, David Roberts and Jennie Roberts, Petitioners, v. Honorable David M. Harbour and Honorable Eileen Nichols, Special District Judges, District Court of Oklahoma County, Oklahoma, Respondents, Case No. 76,832.

An appellate court can take judicial notice of its own records in litigation interconnected with an appeal before it. See Reeves v. Agee, Okl., 769 P.2d 745, 756, n. 40 (1989); Timmons v. Royal Globe Ins. Co., Okl., 713 P.2d 589, 592 n. 10 (1986); Chandler v. Denton, 741 P.2d 855, 861-862 (1987).
For a discussion of other subsequent proceedings, see infra note 28.
[11] The child's father, D.A.D. was a party to the Texas proceedings. He delivered the child to the custodians after the Texas court awarded them custody.
[12] The mother specially appeared to contest the Texas court's jurisdiction. The Texas-court order recites in pertinent part:

"* * * The Court advised the parties through their counsel, that a telephone conversation did occur between the Honorable Robert Stem, District Judge of the 82nd Judicial District Court of Falls County, Texas, and the Honorable David M. Harbour, Special Judge of the District Court in Cause No. FD-90-1831 in the District Court of Oklahoma County, Oklahoma, but that no agreement was reached between the Courts that the Oklahoma Court would make any determinations regarding jurisdiction for the Texas Court. In this regard, the Court informed the parties that the 82nd Judicial District Court of Falls County, Texas, made no such agreement, did not authorize the Oklahoma Court to so rule, does not have the authority to abdicate its jurisdiction in any event, and does not agree to abide by any decision thereof. * * *"
Later the Texas court held a hearing on the merits of the custody dispute, but the mother defaulted.
[13] Guidelines for application of 10 O.S.Supp. 1982 § 1608(A) in custody modification proceedings were set in Holt v. District Court, Okl., 626 P.2d 1336, 1341 (1981).
[14] For the terms of 10 O.S.Supp. 1982 § 1608(A), see infra note 15.
[15] The terms of 10 O.S.Supp. 1982 § 1608(A) provide:

"A. A court of this state shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons." [Emphasis added.]
[16] The Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A mandates deference to another state's pending proceeding. The terms of subsection (g) are:

"(g). A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination." [Emphasis supplied.]
[17] The parties agree that the case is governed by the UCCJA. In Guardianship of Walling, Okl., 727 P.2d 586, 589 [1986], we held the Act applied to guardianship proceedings. The parties treat the Texas conservatorship action as equivalent to our guardianship proceedings.
[18] The mother contends that while the case was on appeal the father, D.A.D., violated the court's custody order by taking the child to the Roberts in Texas. She argues the Roberts should be sanctioned for keeping the child there. Because the Oklahoma court lacked jurisdiction to issue the order under review, we do not consider the mother's estoppel contention.
[19] For the terms of 10 O.S.Supp. 1982 § 1608(A), see supra note 15.
[20] For the terms of 28 U.S.C.A. § 1738A(g), see supra note 16.
[21] The terms of 10 O.S. 1981 § 1603 are:

"The provisions of this act shall apply to all custody proceedings brought within this state, whether as an initial proceeding or modification, and regardless of the absence of jurisdictional dispute." [Emphasis supplied.]
[22] Domicile of a child within the forum state was the original jurisdictional basis for custody decrees. See R. Coombs, Interstate Child Custody: Jurisdiction, Recognition, and Enforcement, 66 Minnesota Law Review 711, 717 n. 35 (1982). Later, the jurisdictional hallmark was physical presence of a child within a state or personal jurisdiction over both parents. No federal limits  other than personal jurisdiction over a defendant  existed. Often more than one state both claimed and exercised jurisdiction over the same child.

The uniform act was developed to assure that states whose interest in the child was most substantial would receive deference from other states. Coombs, supra at 719-720. Some states failed to enact the UCCJA and others varied its provisions. Note, Thompson v. Thompson: The Jurisdictional Dilemma of Child Custody Cases under the Parental Kidnapping Prevention Act, 16 Pepperdine L.Rev. 409, 415-416 (1989). Congress answered the problem by passing the PKPA, 28 U.S.C.A. § 1738A, supra note 16 and infra note 24, to (1) facilitate uniform enforcement of decrees among the states, (2) discourage interstate battles and (3) avoid jurisdictional competition between states. Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).
[23] The jurisdictional prerequisites of 10 O.S.Supp. 1982 § 1605(A) provide, in pertinent part, that a court may determine child custody matters if:

"... 1. This state:
a. is the home state of the child at the time of commencement of the proceeding, or
b. had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
2. It is in the best interest of the child that a court of this state assume jurisdiction because:
a. the child and his parents, or the child and at least one contestant, have a significant connection with this state, and
b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
3. The child is physically present in this state and:
a. the child has been abandoned, or
b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
4. a. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and
b. it is in the best interest of the child that this court assume jurisdiction." [Emphasis supplied.]
[24] Both the PKPA and the UCCJA's Texas version, Tex.Fam.Code Ann. §§ 11.51-11.75 (Vernon 1986), make essentially the same jurisdictional requirements as Oklahoma's UCCJA except both statutes give priority to the state that has home-state jurisdiction.

The pertinent terms of 28 U.S.C.A. § 1738A are:
"* * *
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if 
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C) or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section. * * *"
See Tex.Fam.Code Ann. § 11.53 (Vernon 1986). Jurisdiction based upon (1) significant connections of the child and a party to the state or (2) the availability of substantial evidence about the child's present or future care may be exercised only if "it appears that no other state would have home-state jurisdiction." § 1738A(c)(B)(i) and Tex.Fam.Code Ann. § 11.53(a)(2) (Vernon 1986).
[25] 28 U.S.C.A. § 1738A(a) provides:

"The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State." [Emphasis supplied.]
[26] 28 U.S.C. § 1738A(g). See supra note 16 for its terms.
[27] 10 O.S.Supp. 1982 § 1608(A); see supra note 15 for its terms. See Ewing, infra note 29 at 69; Holt, supra note 13 at 1341-1342.
[28] See Ewing, infra note 29 at 69; Holt, supra note 13 at 1340. What once may have been termed a squabble has in this case escalated into multiple forensic battles over the child. See supra note 10 where we explained that this court takes judicial notice of the interrelated proceeding. A total of seven actions have been filed. These include the two appeals consolidated in this action, the interrelated Supreme Court action, the Texas conservatorship proceeding, the Oklahoma habeas corpus action, the mother's custody suit, and the mother's divorce and custody action.
[29] Okl., 786 P.2d 65, 69 (1990).
[30] In most cases the child's home state, where he has resided for the six months immediately preceding the custody action, would be the place where the most evidence concerning his welfare is available. In the case under review, the child's home state in Texas.
[31] Ewing, supra note 29 at 69; Joliff v. Joliff, Okl., 829 P.2d 34, 36 (1992); This does not end the discussion. Even if no action was pending in another state, Oklahoma's cognizance would depend upon its satisfaction of the UCCJA jurisdictional prerequisites.
[32] See Houtchens v. Houtchens, 488 A.2d 726 (R.I. 1985); Snow v. Snow, 369 N.W.2d 581 (Minn.App. 1985).
[33] Lopez v. Dist. Court, Fourth Jud. Dist., Etc., 199 Colo. 207, 606 P.2d 853, 855-856 (1980); Application of Pierce, 184 Mont. 82, 601 P.2d 1179 (1979). See B. Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, Family Law Quarterly. Vol. XIV, No. 4 at 213 (1981) for the view that the "priority-of-filing" rule of the PKPA means that an action is pending when it is filed, not when process is served. See also Coombs, supra note 22 at 773 for the view that the state law where the first action is filed determines when the proceeding is commenced, i.e., whether upon filing of a pleading, delivery of process to an officer for service, or service.
[34] The pertinent terms of 10 O.S. 1981 § 1606 are:

"Before making a decree under this act, reasonable notice and opportunity to be heard shall be given to the contestants... ." [Emphasis supplied.]
[35] The pertinent terms of 28 U.S.C.A. § 1738A(e) are:

"Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants... ." [Emphasis supplied.]
[36] Even if all parties to this appeal voluntarily submitted to the nisi prius in personam jurisdiction, the court would have no authority to hear the cause if subject matter jurisdiction is missing. UCCJA jurisdiction is not conferred by presence or consent of the adult contestants. Joliff, supra note 31 at 36 & n. 7. See In re Lewis' Adoption, Okl., 380 P.2d 697, 701 (1963), for the view that want of subject matter jurisdiction cannot be waived; see also Merchants Delivery v. Joe Esco Tire Co., Okl., 497 P.2d 766 (1972), where the court held that parties may not confer subject matter jurisdiction by consent.
[37] See Ewing, supra note 29 at 69; Holt, supra note 13 at 1340; see also 9 Uniform Laws Annot. at 134-135, where the Commissioners' note to § 6 of the Uniform Child Custody Jurisdiction Act states:

"Because of the havoc wreaked by simultaneous and competitive jurisdiction ... this section seeks to avoid jurisdictional conflict with all feasible means... .
When the courts of more than one state have jurisdiction under sections 3 or 14, priority in time determines which court will proceed with the action, but the application of the inconvenient forum principle of section 7 may result in the handling of the case by the other court.
While jurisdiction need not be yielded under subsection (a) if the other court would not have jurisdiction under the criteria of this Act, the policy against simultaneous custody proceedings is so strong that it might in a particular situation be appropriate to leave the case to the other court even under such circumstances." [Emphasis supplied.]
[38] Although jurisdiction may exist in two states, that cognizance may not be concurrently exercised. Holt, supra note 13 at 1343.
[39] The pertinent terms of Tex.Fam.Code Ann. § 11.07 (Vernon 1986) are:

"(a) A suit affecting the parent-child relationship shall be commenced by the filing of a petition as provided in this chapter... ."
[40] See Tex. R. Civ. P. Ann. r. 22 (Vernon 1979), which provides:

"A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk." [Emphasis mine.]
[41] See supra notes 39 & 40.
[42] Because "home state" is clearly defined in the act as the place where the child has been living for the last consecutive six months, the trial court erred in holding that the child's "home state" is that of the mother's legal residence. See, e.g., Bergstrom v. Bergstrom, 271 N.W.2d 546, 550 (N.D. 1978); Elder v. Park, 104 N.M. 163, 717 P.2d 1132, 1136-1137 (App. 1986). This error does not change the fact that the Oklahoma court should have deferred to the previously filed Texas litigation. We held in Holt, supra note 13 at 1342, that where a court must make a § 1608(A) determination, it can assume the existence of jurisdiction in deciding whether it may proceed to hear the cause.
[43] Tex.Fam.Code Ann. (Vernon 1986) § 11.52 gives the pertinent definitions. It provides:

"* * *
"(5) `Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six (6) consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six-month period.
"(8) `Physical custody' means actual possession and control of a child.
"(9) `Person acting as a parent' means a person other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody.
* * *"
[44] Tex.Fam.Code Ann. (Vernon 1986) § 11.03. Its pertinent terms provide:

"(a) An original suit affecting the parent-child relationship may be brought at any time by: (8) a person who has had actual possession and control of the child for at least six months immediately preceding the filing of the petition; * * *"
[45] See 10 O.S.Supp. 1982 § 1608(A), supra note 15. The mother contends the child lived only in Oklahoma and his "visits" to Texas were "periods of temporary absence" under § 1604(5). The cited section provides that for purposes of defining "home-state jurisdiction," periods of temporary absence are counted as part of the six-month period. The mother equates her allowing the custodians to assume the child's complete care with sending him to a Texas boarding school. She appeared with counsel at the evidentiary hearing where the Texas court decided that Texas is the child's home state.
[46] The terms of 10 O.S. 1981 § 1609(I) are:

"Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court... ." [Emphasis supplied.]
[47] For a case that holds an Oklahoma court's agreement with a Texas judge, even though memorialized by the Oklahoma court in an order, does not, under Texas law, stay the sister-court proceedings, see In Interest of Wilson, 799 S.W.2d 773 (Tex. App. 1990). After conferring with the Texas court, an Oklahoma judge dictated an order declining jurisdiction over the telephone to a Texas court reporter. The appellate court concluded Texas did not have jurisdiction because the Oklahoma court did not relinquish jurisdiction in a manner contemplated by either the Oklahoma or Texas versions of the UCCJA. In short, the order, an agreement between judges, was not an effective relinquishment of jurisdiction.
[48] The Texas Uniform Child Jurisdiction Custody Act, Tex.Fam.Code Ann. §§ 11.51-11.75 (Vernon 1986), provides in pertinent part at § 11.57:

"(a) A court that has jurisdiction under this chapter to make an initial ... decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
* * *
(c) In determining if it is an inconvenient forum, the court shall consider if it is in the best interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
* * *
(h) On dismissal or stay of proceedings under this section, the court shall inform the court found to be the more appropriate forum of this fact... .
(i) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court... ."
[49] For the terms of 10 O.S.Supp. 1982 § 1608(a), see supra notes 15.
[50] For the terms of 28 U.S.C.A. § 1738A(g), see supra note 16.
[51] While we have taken judicial notice of certain subsequent Texas proceedings, the enforceability in Oklahoma of any Texas orders has not been decided. See generally Roundtree v. Bates, 630 P.2d 1299 (Okla. 1981).
[1] 28 U.S.C. § 1738A (1980).
[2] In Thompson v. Thompson, 484 U.S. 174, 182-183, 108 S.Ct. 513, 518, 98 L.Ed.2d 512, 522 (1988), in deciding that 28 U.S.C. § 1728A does not imply a federal cause of action, the United States Supreme Court said:

The significance of Congress' full faith and credit approach to the child snatching is that ... the Clause "only prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records, and judicial proceedings of a State other than that in which the court is sitting." [State of Minnesota v.] Northern Securities, supra [194 U.S. 48], at 72, 48 L.Ed. 870, 24 S.Ct. 598 [605]. Because Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations, the Act is most naturally construed to furnish a rule of decision for courts to use in adjudicating custody disputes... .
The language and placement of the statute reinforce this conclusion. The PKPA, 28 U.S.C. § 1738A [28 USCS § 1738A], is an addendum to the full faith and credit statute, 28 U.S.C. § 1738 [28 USCS § 1738]. [Emphasis added.]
Something more than the initiating of a suit in the courts of another state by a private individual is necessary to require one state to extend full faith and credit to a judicial proceeding pending in another state.
[3] The majority opinion instructs the Oklahoma district court that verbal agreements between two states regarding child custody litigation should be reduced to written communication. The Oklahoma court did just that. The order on appeal includes a finding that the Texas judge and the Oklahoma judge agreed that Oklahoma should make a finding as to which court should have jurisdiction "in all matters affecting the said minor child, by which decision the Texas Court would abide and, further, that the Honorable David Harbour should determine whether a Writ of Habeas Corpus should lie", and a finding and order that the court should notify the Texas court of the proceedings and inform the Texas court that Oklahoma has assumed jurisdiction over this child custody dispute.

I do not view the communication between the Texas judge and the Oklahoma judge as material evidence in this case. At best, it is one reason for the Oklahoma court to proceed to hear evidence relating to its jurisdiction. The transcript of the March 22, 1990, reveals that the Oklahoma court was concerned that the appellants sought a writ based upon a Texas ex parte order and a mere allegation of paternal relationship to the minor child. The Oklahoma court cautioned the parties that it would hear all their evidence as to jurisdiction as well temporary and permanent custody prior to determining the issues in the consolidated proceedings.
[4] All parties herein voluntarily submitted to the in personam jurisdiction of the court. At the hearing, all parties fully participated with counsel and they were accorded the full panoply of due process. Out-of-state (Texas) evidence was fully presented. The Texas custodians' presented several Texas witnesses, including the school principal, church members and a restaurant employee.
[5] The district court found that Oklahoma is the home state of the minor child, pursuant to the Uniform Child Custody Jurisdiction Act, 10 O.S.Supp. 1982 § 1605. The evidence does not support this conclusion inasmuch as the child had resided in Texas for the six months prior to the litigation. However, "home state" is not the only grounds for Oklahoma jurisdiction. The U.C.C.J.A. and the Parental Kidnapping Prevention Act set out four prerequisites for jurisdiction. These prerequisites are in the alternative. As the district court found, both parents reside in Oklahoma, that is, at least one contestant has significant connections with this state and evidence is available concerning the child's present and future care, protection, training and personal relationships. Holt v. District Court for the Twentieth Judicial District, Ardmore, Carter County, 626 P.2d 1336 (Okla. 1981).

The evidence presented to the Oklahoma district court is sufficient to establish the prerequisites for the exercise of jurisdiction by the Texas courts or the Oklahoma courts, pursuant to the applicable Uniform Child Custody Jurisdiction Act, 43 O.S. 1991, §§ 501, et seq. and, for Texas courts, Tex.Fam.Code Ann. § 11.53. Accordingly, the first state which "is exercising jurisdiction" is entitled to proceed without interference from the other state, pursuant to the federal preemption doctrine and the supremacy clause, application of these state statutes must be consistent with 28 U.S.C. § 1738A.
[6] Pub.L. 96-611, § 7, Congressional Findings and Declaration of Purpose for Parental Kidnapping Prevention Act of 1980.
[7] Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).
[8] 174 W. Va. 498, 327 S.E.2d 675 (1984).
[9] 730 P.2d 1380 (1987).